MIDWEST GLASS COMPANY, Plaintiff-Appellee, *v.* STANFORD DEVELOPMENT Co., Defendant-Appellant—(STANFORD DEVELOPMENT CORPORATION, Defendant-Appellant and Counterplaintiff-Appellant; SAMUEL E. SCHWARTZ, Counterplaintiff-Appellant; MIDWEST GLASS COMPANY, Plaintiff-Appellee and Counterdefendant-Appellee; FRANK SCHOR *et al.*, Counterdefendants-Appellees).

(No. 61630;

First District (4th Division)—November 12, 1975.

Jerome E. Wexler and John P. C. Duncan, both of Chicago (Holleb, Gerstein & Glass, of counsel), for appellants.

Sanford J. Green, of Chicago, for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Plaintiff, Midwest Glass Company (hereinafter referred to as Midwest), commenced this action against defendant, Stanford Development Company (hereinafter referred to as Stanford), for payment of $400.92. This debt was incurred pursuant to an oral contract entered into by the parties on February 25, 1974, wherein Midwest installed, on two separate occasions, mirrors in various apartments of Stanford's condominium development. Stanford and Samuel E. Schwartz, its president, filed a counterclaim and subsequently an amended counterclaim in which damages were sought against Midwest on two counts, namely, (1) for invasion of privacy by public disclosure of private debts and (2) slander of title. The trial court dismissed the amended counterclaim for failure to state a cause of action concerning both counts, thus giving rise to the instant appeal.

On appeal, counterclaimants contend that their pleadings present genuine issues of fact which should have been tried on the merits. With regard to the invasion of privacy contention, it is posited that the amended counterclaim does contain the requisite elements necessary to

warrant an adjudication on such issue. In count I, it is alleged that Stanford is in the business of purchasing, developing and selling real estate, including the building in which Midwest installed the mirrors. Concerning the agreement to purchase the mirrors, counterclaimants allege that the oral contract did not contain any terms governing the time and manner of payment, that Stanford did not tender any payment, and that Samuel E. Schwartz did not personally enter into a contract for the purchase of mirrors. It was alleged further that on or about August 1, 1974, Midwest intentionally and maliciously published orally to various parties, including a customer and purchaser of a condominium unit, that payment was overdue and a lien would be filed against the respective units. Moreover, to compound this effort to harass and coerce Schwartz into rendering payment, on August 2, 1974, the following notice was mailed to 65 individuals, including each of the persons who had purchased condominiums or were tenants.

> "The Stanford Development Co. purchased 26 mirrors from the Midwest Glass Co. and we were advised that there would be one mirror for each condominium. If you were the recipient of this mirror then you are subject to a Mechanics Lien notice which we intend to file with our attorney.
>
> After numerous calls Mr. Sam Schwartz and the Stanford Development Co. have refused to reply to our request for payment. We therefore have no alternative than to proceed with this matter at once.
>
> We regret the inconvenience we will cause you unless you can convince the proper parties that a settlement should be made."

The amended countercomplaint indicated that such oral and written publications of Stanford's accounts with Midwest and Schwartz's refusal to make payments constituted an invasion of privacy since these matters were of a private and not a public concern. As a result of such disclosures, the counterclaimants alleged that they were exposed to public contempt and ridicule and incurred a loss of future sales. To redress such injuries, the counterclaimants sought general, special, and punitive damages.

Counterclaimants also contend that the pleadings satisfy the common law elements necessary for bringing an action based on slander of title. Besides repeating many allegations contained in the invasion-of-privacy count, count II alleged that on August 2, 1974, Midwest maliciously sent a letter to several specified persons as well as prospective purchasers of condominium units in which the following fallacious statement appeared:

> "* * * you are subject to a Mechanic's Lien notice which we intend to file with our attorney."

As a result of such publication, counterclaimants contended they were unable to sell any condominium units from August 4 through September 6, 1974, and subsequently sold an average of only one unit per month in contrast to a pre-August 4, 1974, average of four units per month. Analogous to the invasion-of-privacy count, relief in the form of general, special, and punitive damages were sought.

■■ Before resolving the issues raised on appeal, we agree with counterclaimants that, the motion to strike and dismiss the amended counterclaim raises only a question of law (*Capital Records, Inc., v. Vee Jay Records, Inc.,* 47 Ill.App.2d 468, 475, 197 N.E.2d 503, 508) and the non-moving parties well pleaded allegations are admitted by the movant for the purpose of the motion. *O'Fallon Development Co., Inc. v. Ring,* 37 Ill.2d 84, 88, 224 N.E.2d 782, 784; *Clay v. Chicago Board of Education,* 22 Ill.App.3d 437, 439, 318 N.E.2d 153, 154.

With reference to counterclaimants' first count, the right to privacy as well as the right to a remedy for invasion of such right have received both legislative (Ill. Const., art. I, §§ 6, 12) and judicial sanction (*Leopold v. Levin,* 45 Ill.2d 434, 440, 259 N.E.2d 250, 254) in Illinois. In analyzing the common law right to privacy, Professor William L. Prosser has delineated four distinct kinds of torts which constitute an invasion of privacy. This breakdown, which has been adopted by the Restatement (Second) of Torts § 652A (Tent. Draft No. 13, 1967) as well as many other foreign jurisdictions (*e.g., Marks v. Bell Telephone Co.* (1975), —— Pa. ——, 331 A.2d 424, 430; *Dotson v. McLaughlin* (1975), 216 Kan. 201, 207-08, 531 P.2d 1, 6) comprise the following situations: (1) an unreasonable intrusion upon the seclusion of another, (2) the appropriation of another's name or likeness, (3) a public disclosure of private facts or (4) publicity which unreasonably places another in a false light before the public. Prosser, Law of Torts § 117 (4th ed. 1971).

■■ Applying these concepts to the instant case, it is obvious that we are concerned with the third category of invasion of privacy, in particular, the public disclosure of a private debt. Since the instant controversy is one of first impression in Illinois, deference must be given to legal precepts emanating from foreign jurisdictions. Although those reviewing courts, which have considered this issue, are not uniformly in accord as to what constitutes actionable conduct, it can be fairly stated that the requisite elements for this tort entail (1) an intentional giving of unreasonable publicity (2) to private debts, (3) without the debtor's consent, (4) which is made for the purpose of coercing or harassing the debtor into payment of the debt or of exposing the debtor to public contempt or ridicule. (See "Public Disclosure of a Person's Indebtedness as Invasion of Privacy," Annot.. 33 A.L.R.3d 154, 156-57 (1970);

62 Am.Jur.2d *Privacy* § 39, at 736 (1972).) With reference to these elements, it appears that the extent of publicity or degree of harassment, rather than the character of the oral or written communication, is dispositive of whether a debtor's right to privacy was invaded. "Public Disclosure of a Person's Indebtedness as Invasion of Privacy," Annot., 33 A.L.R.3d 154, 157; 62 Am.Jur.2d *Privacy* § 39, at 738 (1972).

■■ In light of the above legal tenets, we are not persuaded that the facts in the instant case warrant Stanford nor Samuel E. Schwartz to maintain an action for invasion of privacy. Midwest's oral communications of August 1, 1974, did not amount to a privacy infringement since it has been held that in actions involving attempts to collect debts, the general rule is that an invasion of privacy cannot be based merely on oral communications. (*E.g., Gautier v. General Telephone Co.* (1965), 234 Cal.App.2d 302, 309, 44 Cal. Rptr. 404, 409; *Pangallo v. Murphy* (Ky.App. 1951), 243 S.W.2d 496, 497; but see *Norris v. Moskin Stores, Inc.* (1961), 272 Ala. 174, 178, 132 So.2d 321, 325.) Moreover, Midwest's written notice of August 2, 1974, did not constitute a public disclosure of a private debt. It must be remembered that the right of privacy is not absolute but is subject to limitations where there is express or implied consent and legitimate interests. (*Bloomfield v. Retail Credit Co.*, 14 Ill. App.3d 158, 173, 302 N.E.2d 88, 100.) It is also important to note that a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy. *Cunningham v. Securities Investment Co.* (5th Cir. 1960), 278 F.2d 600, 604, *rehearing denied* (5th Cir. 1960), 281 F.2d 439; *Household Finance Corp. v. Bridge* (1969), 252 Md. 531, 540, 250 A.2d 878, 884.

In the case at bar, it was undisputed that Midwest installed mirrors in counterclaimants' premises and no payment was received by Midwest. We believe that Midwest, having a legitimate interest in the context of rendering services without receiving compensation, did reasonably act to pursue its debtor and persuade payment. Midwest's purpose in sending out these letters was not to vilify nor to subject the counterclaimants to continuous harassments, but analogous to those decisions where foreign courts upheld the sending of letters to the debtor's employer (*e.g., Haggard v. Shaw* (1959), 100 Ga.App. 813, 112 S.E.2d 286; *Gouldman-Taber Pontiac, Inc. v. Zerbst* (1957), 213 Ga. 682, 100 S.E.2d 881, *conformed to* (1957), 96 Ga.App. 742, 101 S.E.2d 203), to seek assistance in collecting the amount in arrears.

■■ Furthermore, a fair reading of the counterclaim evinces that the notices of the indebtedness for the mirrors were disseminated not to the

general public but only to a limited number of persons who had a natural and proper interest in the ability and reputation of Stanford to pay its debt since they were either purchasers, prospective purchasers or tenants of the condominium unit in question. This fact is also the key consideration that distinguishes the instant case from those proffered by the counterclaimants in support of their position since here we are not confronted with an invasion-of-privacy action where the creditor attempted to force payment of the debt by exposing the debtor to public contempt or ridicule by publishing the debtor's name and the amount of the debt in a newspaper (*Tollefson v. Price* (1967), 247 Ore. 398, 430 P.2d 990; *Trammel v. Citizens News Co.* (1941), 285 Ky. 529, 148 S.W.2d 708), nor by posting a written notice of the indebtedness in the show window of creditor's place of business which was located in one of the principal streets in a city where both parties resided (*Brents v. Morgan* (1927), 221 Ky. 765, 299 S.W. 967), nor where the creditor, in public or by telephone, made threatening remarks to the debtor's relatives or superiors concerning the debtor's indebtedness (*Pack v. Wise* (La.App. 1963), 155 So.2d 909, *writ refused* (1963), 245 La. 84, 157 So.2d 231; *Biederman's of Springfield, Inc. v. Wright* (Mo. 1959), 322 S.W.2d 892; *Housh v. Peth* (1956), 165 Ohio St. 35, 59 Ohio Op. 60, 133 N.E.2d 340). We therefore conclude that although an action for invasion of privacy based on the public disclosure of private debts may be brought in Illinois the allegations contained in the counterclaim do not substantiate such a tortious offense.

■■ We are also not in accord with counterclaimants' contention that count II specified a cause of action for slander of title. As noted from other jurisdictions, an action for slander of title is not for the words spoken, but for special damages for the loss sustained by reason of the speaking and publication of the slander. (*Landstrom v. Thorpe*, 189 F.2d 46, 51 (8th Cir. 1951), *cert. denied,* 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620). Such an offense is established where there has been a false and malicious publication, either oral or written, of words disparaging an individual's title to property which results in special damages. (*Home Investments Fund v. Robertson*, 10 Ill.App.3d 840, 842, 295 N.E.2d 85, 86.) Although all of these integral elements were alleged in the amended counterclaim, the focal point of controversy concerning the propriety of count II evolves on whether Midwest acted with malice. While it has been held that implied malice is sufficient in an action for slander of title (*Home Investment Fund v. Robertson*), the law in Illinois is that if a party has reasonable grounds to believe that he had legal or equitable title or even a claim, then assertion of this claim does not amount to slander of title (*Weiland Tool & Manufacturing Co. v. Whitney*, 100

136

Ill.App.2d 116, 132, 241 N.E.2d 533, 541, *rev'd on other grounds*, 44 Ill.2d 105, 251 N.E.2d 242).

■■ We believe that this latter directive applies in the case at bar. Midwest did not disseminate the August 2, 1974, letter for an improper motive, but merely to inform interested persons about a matter that could concern them. Since Midwest did furnish services to the counter-claimants and was not compensated for such efforts, it had every reason to believe that it had a efficacious right to file a lien claim. Therefore, we find that, due to the lack of malice on Midwest's part, count II of the amended counterclaim does not establish a recoverable claim for slander of title.

For the reasons given, the judgment is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.