James CHALLEN, et al., Plaintiffs,

v.

TOWN AND COUNTRY CHARGE, et al., Defendants.

No. 81 C 5724.

United States District Court,
N. D. Illinois, E. D.

Aug. 18, 1982.

than to exercise reasonable care. Accordingly, judgment on this cause of action will not be

entered in plaintiff's favor.

Robert P. Nolan, Abramson & Fox, Chicago, Ill., for plaintiffs.

Richard H. Ferri, Paul K. Vickrey, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

James and Cecelia Challen ("Challens") sue Continental Illinois National Bank and Trust Company of Chicago ("Continental") and its Town and Country Charge division ("Town and Country")[1] based on an allegedly tortious letter sent by defendant to Cecelia Challen's employer concerning an outstanding debt. Continental has moved under Fed.R.Civ.P. ("Rule") 12 for an order dismissing Counts I, II, III and V of the Complaint.[2] For the reasons stated in this memorandum opinion and order Continental's motion is granted in part and denied in part.

### Counts I and V

Count I and part of Count V attempt to state a cause of action under the Fair Debt Collection Practices Act (the "Act," 15

1. Because the Complaint itself reflects Town and Country is not a legal entity, this opinion will refer to a singular "defendant" rather than following Challens' improper usage.

2. Defendants also initially requested a more definite statement as to Count IV. That request was granted by this Court's July 6, 1982 memorandum order.

3. Section 1692a(6) does contain a provision under which the use of a second name by a

U.S.C. §§ 1692–1692o). By its terms the Act applies only to "debt collectors," defined in 15 U.S.C. § 1692a(6):

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

Thus the critical issue is whether Continental[3] is collecting its own or another creditor's debts.[4]

■ Challen's ill-drawn Complaint is really unclear on that score (as on numerous others). Paragraph XII alleges:

> Town and Country ... has an independent function separate and apart from [Continental] namely the issuance of credit based on Visa and Mastercharge trade-names which credit is kept separate and apart from other lending and collecting functions conducted by [Continental] ....

That allegation alone could be fatal to Challens' claim for reasons similar to those discussed at n.3. But Complaint ¶ VIII states a basically contradictory allegation, under which "Visa" may be a legal entity rather than a trade name, or alternatively might make Continental a "debt collector" under the other branch of Section 1692a(6):

> Defendants are persons using the mails toward collecting debts on a regular basis owed or due to be asserted to be owed or due to Visa, and Visa is an organization known or identified as Visa, U. S. A.. ...

Under *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)

creditor could make the creditor itself a "debt collector." But if the debts are incurred to "Town and Country," that provision is not brought into play by Continental's use of the same trade name for collection.

4. Continental is not engaged "in any business the principal purpose of which is the collection of any debts." That makes the alternative coverage of Section 1692a(6) inapplicable.

this Court can dismiss the Complaint only if Challens can prove no set of facts that would support a cause of action. Because Challens could conceivably prove the allegations of Paragraph VIII and not of Paragraph XII, Counts I and V can stand.[5]

### Count II

Cecelia Challen owes a debt to Continental. Complaint ¶¶ V–VI allege Continental wrongfully sent a letter to Cecelia's employer saying she (1) owed a debt that was overdue and (2) was unresponsive and unwilling to discuss the delinquency. Finally, Complaint ¶ VI alleges the letter was sent after an agreement had been reached that placed Cecelia "in substantial compliance toward the payment of the debt."

■ Challens allege sending the letter constituted an unlawful violation of Cecelia's right to privacy.[6] But a creditor does not violate a debtor's right to privacy when it sends a letter to an employer informing the employer of the outstanding debt. *Midwest Glass Co. v. Stanford Developments Co.*, 34 Ill.App.3d 130, 134, 339 N.E.2d 274, 277 (1st Dist. 1975); *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956); *Patton v. Jacobs*, 118 Ind.App. 358, 78 N.E.2d 789 (1948). To escape that rule Challens contend their privacy rights were invaded because the letter was sent after an agreement was reached as to the outstanding debt.

■ That additional factor is not sufficient to state a cause of action for invasion of privacy, whose elements are, *Midwest Glass*, 34 Ill.App.3d at 133, 339 N.E.2d at 277:

(1) an intentional giving of unreasonable publicity

(2) to private debts

(3) without the debtor's consent,

(4) made for the purpose of coercing or harassing the debtor into payment of the debt or of exposing the debtor to public contempt or ridicule.

Generally courts have found those standards satisfied when a creditor engages in a long pattern of harassing a debtor into payment of a debt. For example, the following facts were found sufficient in *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340, 344 (1956):

> However, the factual situation developed in the instant case is entirely different. The record shows that the defendant deliberately initiated a systematic campaign of harassment of the plaintiff, not only in numerous telephone calls to the plaintiff herself every day for a period of three weeks, some of which were late at night, but also calls to her superiors over the telephone, informing them of the debt.... The calls to the employer, and the rooming house, were all part of a pattern to harass and humiliate the plaintiff and cause her mental pain and anguish and cause her emotional disturbance for the purpose of coercing her to pay the debt.

In other words, an action for invasion of privacy will lie only when a creditor corresponds with an employer not legitimately to seek the employer's assistance in collecting a debt but rather as an unreasonable attempt to coerce or harass the debtor into paying the debt.

Here Complaint ¶ VI confirms that even after the alleged agreement was reached some debt remained outstanding. Thus the letter's alleged improprieties were (1) its

---

**5.** Continental's memoranda really do not address the status of Visa, a subject that requires going outside the Complaint itself. This opinion does not indicate any ruling on the different facts that a summary judgment motion (for example) might develop.

**6.** Two choice of law questions are posed by the Complaint:

(1) whether this action, originally filed in Ohio and then transferred to this Court, should employ the Ohio or Illinois choice of law rules;

(2) whether the applicable choice of law rules would look to Ohio or Illinois to supply the substantive rules of decision.

Fortunately Continental has correctly stated that the issues need not be resolved, because no conflict appears in the relevant substantive law of the two states.

failure to reflect the recent agreement and (2) its statement Cecelia was uncooperative. Though such allegedly false statements might constitute a libel, they do not support an invasion of privacy claim. One letter is still one letter. While the false statements may permit an inference of coercive intent (the fourth element of the *Midwest Glass* test), they do not constitute "unreasonable publicity" (the first element). As *Midwest Glass*, 34 Ill.App.2d at 134, 339 N.E.2d at 277 put it:

> With reference to these elements, it appears that the extent of publicity or degree of harassment, rather than the character of the oral or written communication, is dispositive of whether a debtor's right to privacy was invaded.

Thus Challens have failed to plead an actionable invasion of privacy and Count II must be dismissed.

### Count III

 Count III alleges Continental's actions constitute a tortious interference with Cecelia's contract of employment. Under both Illinois and Ohio law such a cause of action requires an allegation defendant triggered an actual breach of contract. *Herman v. Prudence Mutual Casualty Co.*, 41 Ill.2d 468, 473–78, 244 N.E.2d 809, 812–14 (1969); *Standard Oil Co. v. Landmark Farm Bureau Cooperative*, 52 Ohio App.2d 225, 369 N.E.2d 785, 788 (Ohio Ct.App.1976). No such allegation of actual breach is made here. Count III is also dismissed.

### Count V

Count V also alleges Continental violated Sections 2917.21 and 4931.31 of the Ohio Revised Code. Those however are criminal statutes, and neither the statutes themselves nor any Ohio cases indicate they provide a civil private right of action. Accordingly that part of Count V must be dismissed.

### Conclusion

As already indicated, the Complaint reflects little prior analysis or current craftsmanship. At this point a patchwork quilt of allegations survives, making an answer difficult. Challens are ordered to file an amended complaint, responsive to this Court's July 6 ruling and this opinion, on or before September 1, 1982. Continental shall answer or otherwise plead to that amended complaint on or before September 15. This action is set for a status hearing October 15 at 9:15 a. m.