37 F.3d 1501
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 MIDWEST BANK OF FREEPORT, an Illinois banking corporation,
Plaintiff (Counter-defendant)--Appellee,
v.
Virginia L. GINGELL, Trustee of the DMV Family Preservation
Trust, Defendant (Counter-plaintiff)--Appellant.
 No. 93-4069.
 United States Court of Appeals, Seventh Circuit.
 Argued June 6, 1994.
Decided July 25, 1994.
 
 Before COFFEY, ALARCON* and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Virginia L. Gingell, as Trustee of DMV Family Preservation Trust ("DMV"), appeals from the order granting summary judgment in favor of Midwest Bank of Freeport ("Midwest") and the dismissal of its counterclaim against Midwest for slander of title. DMV contends that the district court erred in finding (1) that DMV no longer maintained a security interest in a residential property previously owned by Thomas and JoAnn Garman, (2) that DMV lacked standing to challenge the validity of Midwest's acquisition of the property at a foreclosure sale, and (3) that DMV had failed to state a claim for slander of title. We affirm because we find no merit to these contentions.
 
 I. BACKGROUND
 
 2
 This case involves three separate loan transactions spanning a period of twelve years. In 1979, Thomas and JoAnn Garman, Trustees for the Cedar Creek Family Preservation Trust ("Cedar Creek Trust"), mortgaged their Cedarville, Illinois residence in exchange for a loan from Freeport Savings and Loan ("Freeport") in the amount of $40,000.00 ("the 1979 Freeport-Garman loan"). The agreement between Freeport and the Garmans included a clause permitting additional loans of money up to $40,000.00 that would be secured by the same mortgage. DMV purchased the secured loan agreement in 1991 from HomeBanc, Freeport's successor, for $36,000.00.
 
 
 3
 In 1981, Thomas Garman borrowed an additional $116,400.00 from Midwest ("the 1981 Midwest-Garman loan"). As security for the loan, Garman executed a second mortgage on the Cedarville residence. Donald Tangwall, Trustee of the Cedar Creek Family Preservation Trust, testified during his deposition that in 1987, JoAnn Garman transferred the Cedarville residence to the Cedar Creek Trust.
 
 
 4
 In 1991, the Cedar Creek Trust entered into a loan agreement with DMV ("the 1991 DMV-Cedar Creek Trust loan"). The Cedar Creek Trust agreed to pay $100,000.00 to DMV in exchange for a cash loan in the amount of $64,000.00 and the assumption by the Cedar Creek Trust of the $36,000.00 debt owed by the Garman's on the 1979 Freeport-Garman loan. The 1991 DMV-Cedar Creek Trust loan agreement stated that "payment of this note is secured by mortgage deed dated July 25, 1979 herewith to assigned from HomeBanc FSB on 5-7-1991 to DMV Family Preservation Trust on real estate in the County of Stephenson and State of Illinois."
 
 
 5
 In 1991, Midwest obtained a confessed judgment in an Illinois state court against Thomas Garman on the 1981 Midwest-Garman loan. Midwest subsequently foreclosed on its second mortgage in the same court subject to the remaining interest in the first mortgage.
 
 
 6
 Midwest subsequently filed this action in the district court seeking an accounting to determine the amount, if any, owed to DMV on the 1979 Freeport-Garman loan. Midwest alleged that nothing is owed to DMV because the mortgage was extinguished when the Cedar Creek Trust assumed the Garmans' $36,000.00 debt on the 1979 Freeport-Garman loan.
 
 II. ANALYSIS
 A.
 
 7
 DMV contends that a future advances clause in the 1979 Freeport-Garman loan created a security interest that covered the $100,000.00 it loaned to the Cedar Creek Trust in 1991. We review de novo the district court's grant of summary judgment. In re Wade, 969 F.2d 241, 245 (7th Cir.1993).
 
 
 8
 The undisputed facts demonstrate that the future advances clause in the 1979 Freeport-Garman loan expressly limited any additional loans to Thomas and JoAnn Garman, as the borrowers, to an amount no greater than $40,000.00.[1] Accordingly, the loan of $100,000.00 to a third party, the Cedar Creek Trust, was not consistent with the terms of the 1979 Freeport-Garman loan.
 
 
 9
 The undisputed evidence shows that DMV agreed to look to the Cedar Creek Trust for payment of the $36,000.00 still owed by the Garmans on the 1979 Freeport-Garman loan.[2] Under Illinois law, the legal effect of the loan agreement with the Cedar Creek Trust was to release the Garmans from their obligation to make any further payments on the 1979 Freeport-Garman loan, and to discharge the first mortgage on the Garman's Cedarville residence. Olney Trust Bank v. Pitts, 558 N.E.2d 398 (1990). In Olney, the Appellate Court of Illinois held that "a release of the debt secured by a mortgage operates as a discharge of the mortgage." Id. at 403. Thus, the language in the 1991 DMV-Cedar Creek Trust loan which indicated that "payment of this note is secured by mortgage deed dated July 25, 1979" had no legal effect. The mortgage on the Garman's Cedarville residence was extinguished by operation of law when the Cedar Creek Trust assumed the debt owing on the 1979 Freeport-Garman loan. Accordingly, the district court did not err in concluding that the mortgage executed by the Garman's to secure the 1979 Freeport-Garman loan was discharged by the 1991 DMV-Cedar Creek Trust loan.
 
 B.
 
 10
 DMV contends that Midwest lacks standing to bring an action for an accounting to determine the amount owing on the 1979 Freeport-Garman loan because the confessed judgment and the judgment of foreclosure obtained by Midwest in an Illinois state court are void. Midwest argues in response that DMV is precluded from relitigating this issue based upon the doctrines of collateral estoppel and res judicata.
 
 
 11
 Although neither of the parties question the jurisdiction of the district court in this matter, we must do so sua sponte. Commercial Nat. Bank of Chicago v. Demos, 18 F.3d 485, 487 (7th Cir.1994). We lack jurisdiction to review the validity of the confessed judgment and the judgment of foreclosure because a federal district court, with certain exceptions not applicable in this matter, may not review the validity of a state court judgment. Ritter v. Ross, 992 F.2d 750, 752 (7th Cir.1993) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)), cert. denied, 114 S.Ct. 694 (1994).
 
 C.
 
 12
 DMV asserts that Midwest slandered its title to the residential property formerly owned by the Garmans by recording its deed with knowledge that DMV held a first mortgage. In order to prevail on its claim, DMV was required to demonstrate that Midwest falsely and maliciously published words disparaging DMV's title to property resulting in special damages. Midwest Glass Co. v. Stanford Dev. Co., 339 N.E.2d 274, 278 (1975). After Midwest Bank foreclosed on the second mortgage, it bought the property at a sheriff's sale and recorded the deed. Midwest's actions did not slander DMV's title because Midwest took title subject to all prior existing liens and encumbrances. Therefore, DMV's first mortgage was unaffected by Midwest's recording of the deed. Under Illinois law, a suit to foreclose a second mortgage cannot cut-off prior interest in the property held by the first mortgagee, and the buyer at a foreclosure sale takes the property subject to the first mortgage. Heritage Fed. Credit Union v. Giampa, 622 N.E.2d 48, 49 (1993). The district court did not err in dismissing DMV's counterclaim.
 
 
 13
 AFFIRMED.
 
 
 
 *
 Honorable Arthur L. Alarcon, Senior Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 The future advances clause states as follows: "Upon request of Borrower, Lender, at Lender's option prior to release of this mortgage, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are secured hereby. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the original amount of the Note plus US $[40,000.00]." Under the clause, the maximum loan that would be secured was $80,000.00
 
 
 [2]
 The record shows that Virginia L. Gingell, the Trustee of DMV, testified that the Garman's owe nothing on the original loan. She stated that the Cedar Creek Trust is solely responsible for the payment of the $100,000.00 still owing on the DMV-Cedar Creek Trust loan