SIXTH DIVISION
December 7, 2006

No. 1-06-1158

| | | |
|---|---|---|
| MICHAEL CORDTS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 04 L 9146 |
| CHICAGO TRIBUNE COMPANY | ) | |
| and MEDEVAL CORPORATION, | ) | Honorable |
| | ) | Kathy M. Flanagan |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiff, Michael Cordts, brought claims entitled "invasion of privacy" and "defamation" against his employer, Chicago Tribune Company (Chicago Tribune), and Medeval Corporation (Medeval), a company hired by Chicago Tribune to evaluate the disability claims of Chicago Tribune employees. Cordts alleged that an employee of Medeval wrongfully disclosed to his ex-wife that he was receiving treatment for depression after the Medeval employee learned of the fact while evaluating his disability claim. Defendants brought a joint motion to dismiss the defamation claims based on section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)), and a motion to dismiss the "invasion of privacy" claims based on section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2004)). The circuit court granted both motions and Cordts now appeals only the section 2-619 dismissal of his "invasion of privacy" claims. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Cordts filed his complaint and jury demand on August 19, 2005. Count II of the complaint is entitled "Chicago Tribune Company - Invasion of Privacy" and count IV is entitled "Medeval - Invasion of Privacy." The two counts, which are nearly identical, allege the following pertinent facts. In March of 2004, Cordts applied to his employer, Chicago Tribune, for short-term disability benefits and Chicago Tribune, in turn, requested that Medeval provide it with a recommendation regarding Cordts's request. In August of 2004, Cathy Channing, an employee of Medeval who learned of Cordts's request for disability benefits through her employment, disclosed to Cordts's ex-wife, Kathleen, that Cordts was receiving treatment for depression. Cordts discovered that his health information had been disclosed to his ex-wife on August 19, 2004.

Cordts's complaint further alleged that Chicago Tribune had provided him with a document entitled "Information Concerning Privacy Practices Under Tribune Group Benefits Plan and Employee Assistance Plan" that ensured him that his health information would not be disclosed to unauthorized parties. Cordts asserted that the confidential information disclosed was of the kind that would be highly offensive to a reasonable person and that the disclosure was especially devastating to him due to the "special relationship" he had with his ex-wife. The complaint next stated that defendants:

"owed a duty of care to [Cordts] so as not to unreasonably give publicity to the private life of [Cordts] and additionally owed a duty of care to [Cordts] under 740 ILCS 110/3, commonly known as the Mental Health and Developmental

2

Disabilities Confidentiality Act and also under the Defendant Tribune's own privacy policies."

Defendants did not file an answer but moved to dismiss the complaint, stating: "Counts II and IV of the Complaint are claims for damages based upon the tort, invasion of privacy." Defendants asserted, citing Doe v. TCF Bank Illinois, 302 Ill. App. 3d 839, 841, 707 N.E.2d 220, 221 (1999), that to state a cause of action for public disclosure of private facts, a plaintiff must plead: "(a) Defendants gave publicity; (b) to Plaintiff's private, not public, life; (c) the matter publicized was highly offensive to a reasonable person; and (d) the matter published was not a legitimate public concern." Defendant acknowledged that the publicity element of the tort may be satisfied by disclosing the matter to a small number of persons if those persons have a "special relationship" with the plaintiff. However, defendants averred, again citing Doe, 302 Ill. App. 3d at 842-43, 707 N.E.2d at 221, that the publicity element of the tort is not satisfied where the persons to whom the information is disclosed have a "natural and proper interest" in the information.

Defendants argued that Cordts's ex-wife Kathleen had a "natural and proper interest" in Cordts's treatment for depression because he was "financially responsible for medical and life insurance as well as college tuition and expenses for his daughter." In support of this contention, defendants attached a copy of the judgement order for the dissolution of the Cordts's marriage, dated December 1, 2005, as well as a "marital settlement agreement," which was executed by Cordts and Kathleen in conjunction with their divorce. In addition to setting forth Cordts's responsibilities with regard to maintaining health and life insurance policies for their child and

No. 1-06-1158

for otherwise supporting her, the marital settlement agreement contained a section, entitled "joint parenting agreement," that stated in part:

"The parties agree that the maximum involvement and cooperation of both parents is required and in the child's best interests, and accordingly the parties shall confer with each other about and jointly decide all important matters pertaining to the child's health, welfare, education and upbringing with a view toward arriving at a harmonious policy designed to promote the child's best interests.

***

The parties agree that they are attempting to resolve their differences through the use of a joint parenting agreement and they recognize that the joint residential parenting schedule and the joint custody itself as provided herein may require future adjustments and changes to reflect the child's best interests in the future after taking into account:

A. The ability of the parents to cooperate effectively and consistently with each other;

B. The residential circumstances of each parent; and

C. All other factors which my be relevant to the best interests of the child.

The parents also recognize that this joint parenting agreement is a dynamic concept subject to reevaluation and change based upon a change in circumstances of a parent or child including but not limited to illness, employment requirements

4

and location, economic circumstances, the child's needs, requirements and development, change in residence locations and other social, psychological and economic changes."

Defendants also attached an affidavit from Medeval employee, Channing, in which she stated that her daughter, Jaclyn, had been friends with the Cordts's daughter Catherine for several years. Channing also stated that Catherine had visited with Jaclyn many times in the Channing home, that Catherine attended a party at the Channing home on June 27, 2004, where she told Channing that she planned to attend DePaul University in the fall of 2004, and that Catherine visited the Channing home during the 2004 Christmas holidays and reported that she had, in fact, begun attending DePaul University.

In response to defendants' motion to dismiss, Cordts first cited the same elements of an action for public disclosure of private facts as asserted by defendants. Cordts then denied that Kathleen had a "natural and proper interest" in knowing that her husband was receiving treatment for depression, stating that the fact was "completely irrelevant to whether he would be able to pay for medical, dental and life insurance, as well as his daughter's college tuition" as required by the couple's marital settlement agreement. Amidst this argument, Cordts further stated that defendants' disclosure of his confidential information was in violation of the Mental Health and Developmental Disabilities Confidentiality Act (hereinafter "Confidentiality Act") (740 ILCS 110/1 *et seq*. (West 2004)), which "stringently and fiercely protects the disclosure of such information." Cordts also quoted section 3 of the Confidentiality Act, which states that a person's mental health information "shall not be disclosed except as provided in this Act" (740

5

ILCS 110/3 (West 2004)), and averred that none of the Act's exceptions to disclosure applied in his case.

Defendants replied to Cordts's response to their motion to dismiss, contending again that Cordts's ex-wife had a "natural and proper interest" in the disclosed information. Additionally, in a footnote to their reply, defendants stated:

"Plaintiff's references to the [Confidentiality Act] are entirely irrelevant to this Court's determination as to whether there was a publication in a tort action for invasion of privacy. Indeed, plaintiff has not alleged a cause of action under the [Confidentiality Act.] Any references thereto are nothing more than a red herring and should be ignored."

The record on appeal does not reflect that oral arguments were held on defendants' motions to dismiss, nor that any evidentiary hearing was conducted. The circuit court issued its memorandum opinion and order on March 15, 2006. In summarizing the parties' arguments in the "factual background" section of its memorandum opinion, the court stated:

"[T]he Plaintiff *** argues that his ex-wife does not have a natural and proper interest in his mental state as it does not directly affect her. He points out that his treatment for depression is irrelevant to his ability to pay for his daughter's expenses. Further, the Plaintiff contends that disclosure of his treatment for depression was in violation of the [Confidentiality Act.]

*** [T]he Defendants argue that there is no more 'natural and proper' interest than a parent's awareness of circumstances that may adversely affect the

well being of her children. Thus, a mother has a natural and proper interest in her child's father's mental health, ability to work, ability to support the child and ability to participation [*sic*] father/daughter activities."

In the "discussion and ruling" section of its memorandum opinion, the circuit court stated:

"In the instant case, the Plaintiff's treatment for depression was disclosed to his ex-wife, who, all parties concede, has a special relationship with the Plaintiff. The evidence in the record shows that the Plaintiff was obligated to pay for insurance coverage, tuition and expenses for his daughter. Further, the Plaintiff and his ex-wife shared joint custody of the child, although it was agreed that the child would reside primarily with the mother, and made joint decisions regarding the child's welfare. His ex-wife, the child's mother, has a legitimate interest in anything that would adversely affect her child and the support of her child both financially and emotionally. The mental state of a parent affects the parent's ability to work and thus provide for the child financially and it affects the parent's ability to interact with the child and thus provide for the child emotionally. Therefore, the ex-wife, Kathleen Cordts, would have a natural and proper interest in her ex-husband's mental health as it impacts their child's support and well being. Further, it also impacts the ex-wife as she would be responsible for the entire support of her child should the father become incapacitated. Therefore, the Court finds that as Kathleen Cords had a natural and proper interest

in the mental health of her ex-husband, the claim for disclosure of private facts

cannot stand and counts II and IV must be dismissed."

On appeal, Cordts contends that the circuit court erred in dismissing his complaint on the

basis of the "natural and proper interest" exception to the common law tort of public disclosure

of private facts because his condition and treatment had no bearing on his duties to either his

child or ex-wife. Cordts further contends that the circuit court's dismissal was in error because

defendants' disclosure was in violation of the Confidentiality Act. In support of the judgment

below, defendants repeat their contention that their disclosure was not tortious on the grounds

that Cordts's ex-wife did, in fact, have a "natural and proper interest" in the information because

Cordts's condition could potentially affect his ability to support his child. Defendants further

contend that Cordts never actually alleged a claim based on the Confidentiality Act. Finally,

defendants alternatively contend that the Confidentiality Act has abrogated the common law

action for public disclosure of private facts, at least with regard to the subjects covered by the

Act, and, therefore, Cordts's failure to plead the Act has left him with no cause of action at all.

## II. ANALYSIS

As noted, counts II and IV of Cordts's complaint were dismissed pursuant to defendants'

section 2-619 motion.

"A section 2-619 motion to dismiss *** admits the legal sufficiency of the

complaint and raises defects, defenses or other affirmative matters *** which

appear on the face of the complaint or are established by external submissions

which act to defeat the plaintiff's claim, thus enabling the court to dismiss the

No. 1-06-1158

complaint after considering issues of law or easily proved issues of fact."

Lipinski v. Martin J. Kelly Oldsmobile, Inc., 325 Ill. App. 3d 1139, 1144, 759

N.E.2d 66, 69 (2001).

"When a court rules on a section 2-619 motion to dismess, it 'must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " Van Meter v. Darien Park District, 207 Ill. 2d 359, 367-68, 799 N.E.2d 273, 278 (2003), quoting In re Chicago Flood Litigation, 176 Ill. 2d 179, 189, 680 N.E.2d 265 (1997). We review section 2-619 dismissals *de novo*. Van Meter, 207 Ill. 2d at 368, 799 N.E.2d at 278.

We first address the circuit court's section 2-619 dismissal of Cordts's common law claim for public disclosure of private facts. Both parties agree that to state a common law claim for invasion of privacy through public disclosure of private facts, a plaintiff must plead that:"(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person." Miller v. Motorola Inc., 202 Ill. App. 3d 976, 978, 560 N.E.2d 900, 902 (1990), citing W. Keeton, Prosser & Keeton on Torts §117, at 856-57 (5th ed. 1984); see also Johnson v. K Mart Corp., 311 Ill. App. 3d 573, 579, 723 N.E.2d 1192, 1197 (2000); Doe, 302 Ill. App. 3d at 841, 707 N.E.2d at 221 (adding a fourth element that "the matter published was not of legitimate public concern"). Generally, to satisfy the publicity element of the tort, a plaintiff must show that the information was disclosed to the public at large; however, the publicity requirement may be satisfied where a disclosure is made to a small number of people who have a "special relationship" with the plaintiff. See Miller, 202 Ill. App. 3d at 980, 560 N.E.2d at 903 ("courts

9

have realized that in circumstances where a special relationship exists between the plaintiff and 'the public' to whom the information has been disclosed, the disclosure may be just as devastating to the person even though the disclosure was made to a limited number of people"); Beaumont v. Brown, 401 Mich. 80, 104-05, 257 N.W.2d 522, 531 (1977) ("Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom the individual is not concerned obviously is not a 'serious interference' with plaintiff's right to privacy, although it might be 'unnecessary' or 'unreasonable.' An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure, or a particular public such as fellow employees, club members, church members, family, or neighbors, if the person were not a public figure"), *overruled on other grounds by* Bradley v. Saranac Community Schools Board of Education, 455 Mich. 285, 565 N.W.2d 650 (1997).

Since, as noted, a section 2-619 motion to dismiss "admits the legal sufficiency of the complaint and raises defects, defenses or other affirmative matters" (Lipinski, 325 Ill. App. 3d at 1144, 759 N.E.2d at 69), defendants, in bringing their section 2-619 motion, have tacitly conceded that Cordts had a "special relationship" with his ex-wife that would satisfy the publicity element of the tort despite the fact that the disclosure was not made to the general public. However, defendants contend by way of affirmative defense that the disclosure was, nevertheless, excusable because Kathleen had a "natural and proper interest" in the information. Specifically, defendants contend that Kathleen had a right to know the information because

10

No. 1-06-1158

Cordts was responsible for helping support their child pursuant to the couple's marital settlement agreement and his mental condition could potentially hinder his ability to meet his obligations, financially and otherwise.

      Under prevailing law, the "special relationship" exception to the requirement that the disclosure be made to the general public will not apply where the person in the "special relationship" with the plaintiff has a "natural and proper interest" in the information disclosed. See Midwest Glass Co. v. Stanford Development Co., 34 Ill. App. 3d 130, 135, 339 N.E.2d 274, 278 (1975); Doe, 302 Ill. App. 3d at 843, 707 N.E.2d at 222; Roehrborn v. Lambert, 277 Ill. App. 3d 181,185, 660 N.E.2d 180, 185 (1995).  We note, however, that although a person in a "special relationship" with a plaintiff is more likely than others to have a "natural and proper interest" in the plaintiff's private information by virtue of that "special relationship," the existence of a "special relationship" does not necessarily create a "natural and proper interest." See Midwest Glass Co., 34 Ill. App. 3d at 135, 339 N.E.2d at 278 (1975); Doe, 302, Ill. App. 3d at 843, 707 N.E.2d at 222.  What constitutes a "natural and proper interest" is discussed in Midwest Glass Co. and Doe.  In Midwest Glass Co., one of the first Illinois cases to discuss the "special relationship" exception and the "natural and proper" limitation to that exception, a condominium developer failed to pay a glass company for the installation of mirrors in several condominiums.  Midwest Glass Co., 34 Ill. App. 3d at 135, 339 N.E.2d at 278.  The glass company then sent letters to purchasers and prospective purchasers of condominiums informing them that payment for the mirrors was overdue and that a mechanic's lien would be filed. Midwest Glass Co., 34 Ill. App. 3d at 132, 339 N.E.2d at 276.  The appellate court found that the

11

glass company's disclosure of the developer's debt was not tortious, noting that the letters were not intended "to vilify nor to subject [the developer] to continuous harassments," but were a reasonable way for the glass company to "pursue its debtor and persuade payment." Midwest Glass Co., 34 Ill. App. 3d at 135, 339 N.E.2d at 278. The court further noted that the disclosure was not made to "the general public but only to a limited number of persons who had a natural and proper interest in the ability and reputation of [the developer] to pay its debts." Midwest Glass Co., 34 Ill. App. 3d at 134-35, 339 N.E.2d at 278. Similarly, in Doe, the appellate court held that a bank's disclosure of the plaintiff's credit card debt to his spouse was not tortious because she had a "natural and proper interest" in the information inasmuch as she could potentially be liable for those debts and because plaintiff's debts decreased the value of her interest in the marital property. Doe, 302 Ill. App. 3d at 843, 707 N.E.2d at 222; see also Roehrborn, 277 Ill. App. 3d at 185, 660 N.E.2d at 185 (police chief's disclosure to an administrator at a police training institute that a probationary police officer had failed polygraph and psychological tests was not tortious because the institute had a "legitimate" and "natural and proper interest in knowing the performance of potential applicants *** on the psychological and polygraph tests"); Stern v. Great Western Bank, 959 F. Supp. 478, 483 (N.D. Ill. 1997) (plaintiff's ex-wife's attorney had a natural and proper interest in plaintiff's financial records as disclosed by his mortgage lender because plaintiff had put his financial records at issue by asserting that he was unable to contribute to his son's education in a state court action brought by his ex-wife).

Thus, as can be ascertained from the foregoing cases, a recipient of private information

12

No. 1-06-1158

may have a "natural and proper interest" in information that relates to potential future harm or liability to that person. For instance, the court in Doe found that the plaintiff's wife had a legitimate concern in knowing of the plaintiff's debts because they could "*potentially* adversely [affect] her future financial security," and because "she [was] *potentially* liable" for them. (Emphasis added.) Doe, 302 Ill. App. 3d at 843, 707 N.E.2d at 222. Similarly, the court in Midwest Glass Co. found that condominium owners and potential purchasers of condominiums had a legitimate interest in the fact that the developer had not paid for mirrors in the condominiums because the glass company could file a mechanic's lien, although it had not yet filed any lien and was not certain to do so. Midwest Glass Co., 34 Ill. App. 3d at 135, 339 N.E.2d at 278.

Accordingly, we would have to agree with defendants that an ex-wife would have a natural and proper interest in learning about any debilitating condition suffered by her ex-husband that could impact his ability to maintain support of the their children. In this case, no one disputes that Cordts was liable to provide support to his daughter and that if he ceased to be able to support her, that obligation would fall solely to Kathleen, the child's mother. While it would be of interest to have a more detailed description of Cordts's mental condition to fully ascertain the potentiality of harm to Kathleen, as the recipient of the private information regarding Cordts's mental condition, the record that Cordts has supplied us shows only that he was receiving treatment for depression and that he sought short-term disability benefits. Cordts, by his claim, tacitly concedes that his mental condition was such that a disability claim was appropriate. Therefore, in the absence of any other information tending to minimize the potential

13

effect of his condition, we conclude that the fact that Cordts sought disability benefits was sufficient to indicate that his condition could have potentially impacted his ability to support his daughter and, thereby, could have harmed his ex-wife, Kathleen. Consequently, we cannot disagree with the circuit court's determination that the common law action should be dismissed pursuant to section 2-619.

Cordts, however, would contend that even if his common law claim fails by reason of the "natural and proper interest" exception, his action is maintainable under the Confidentiality Act. The Confidentiality Act provides that "any record kept by a therapist or by an agency in the course of providing mental health *** service to a recipient" and "any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health *** services to a recipient," including "information which indicates that a person is a recipient" of mental health services, "shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/2, 3(a) (West 2004). Section 15 states: "Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief." 740 ILCS 110/15 (West 2004). The Confidentiality Act's specifically enumerated exceptions for where disclosures can be made without the mental health care recipient's consent include, by way of example, disclosures for purposes of reviewing a therapist's or agency's licensure (740 ILCS 110/7(a) (West 2004)), interagency disclosures (740 ILCS 110/7.1 (West 2004)), disclosures to a therapist's supervisors or peers for review (740 ILCS 110/9 (West 2004)), disclosure with regard to sexually violent persons (740 ILCS 110/9.3 (West 2004)), and disclosures in civil, criminal, and other proceedings (740 ILCS 110/10 (West

14

2004)). Our supreme court has emphasized that these few exceptions to the Confidentiality Act are strictly limited and are not to be expanded. See, *e.g.*, Norskog v. Pfiel, 197 Ill. 2d 60, 71-72, 755 N.E.2d 1, 9 (2001) ("[i]n each instance where disclosure is allowed under the Act, the legislature has been careful to restrict disclosure to that which is necessary to accomplish a particular purpose. Exceptions to the Act are narrowly crafted. [Citation.] When viewed as a whole, the Act constitutes a 'strong statement' by the General Assembly about the importance of keeping mental health records confidential. [Citation.] *** Consequently, anyone seeking the nonconsensual release of mental health information faces a formidable challenge and must show that disclosure is authorized by the Act"); Reda v. Advocate Health Care, 199 Ill. 2d 47, 60, 765 N.E.2d 1002, 1010 (2002) ("In each case where disclosure is allowed under the Act, the legislature has been careful to restrict disclosure to that which is necessary to accomplish a particular purpose. Exceptions to the Act are narrowly crafted"); accord Mandziara v. Canulli, 299 Ill. App. 3d 593, 599, 701 N.E.2d 127, 132-33 (1998) ("The Act is 'carefully drawn to maintain the confidentiality of mental health records except in the specific circumstances specifically enumerated.' [Citation.] *** If we were to hold Canulli did not violate the Act merely because he did not look at Mandziara's records, we would be rewriting the statute, effectively eroding unmistakable legislative intent under the weight of judicial fiat"). The fact that a person has a "natural and proper interest" in another person's mental health records is not included in the Confidentiality Act's enumerated exceptions. Therefore, we find that the "natural and proper interest" defense to the common law tort of public disclosure of private facts is not a defense to a claim based on the Confidentiality Act.

Defendants, however, contend that Cordts never attempted to state a claim for violation of the Confidentiality Act in counts II and IV of his complaint. Thus, according to defendants, Cordts has waived his right to invoke the Confidentiality Act on appeal. In that regard, we note that defendants do not purport to contest the substantive applicability of the Confidentiality Act to the instant facts, but merely contend that no such cause of action was invoked. We disagree with defendants and find that Cordts did, in fact, plead enough to state a cause of action for violation of the Confidentiality Act.

Although Cordts's complaint does not recite specific provisions of the Confidentiality Act, it does states that defendants "additionally owed a duty of care to the plaintiff under the [Confidentiality Act]." Illinois Supreme Court Rule 133(a) states: "If a breach of statutory duty is alleged [in a pleading], the statute shall be cited in connection with the allegation." 134 Ill. 2d R. 133(a). "The fact that the statute need not be quoted, only cited, implies that its purpose is to give notice to the court and the opposing parties that the pleader is basing his case, at least in part, on a particular statute." 3 R. Michael, Illinois Practice §24.9, at 393 (1989); see also 735 ILCS 2-612 (b) (West 2004) ("No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet"). In this case, Cordts specifically named and cited the Confidentiality Act and, as noted, stated that defendants owed him a duty under the Act. In each count, Cordts also sets forth allegations of fact that, on their face, would suffice to state a cause of action under the Act's provisions. See 740 ILCS 110/2, 3, 5, 15 (West 2004). Moreover, defendants were on notice and the court was aware that Cordts had invoked the Confidentiality Act. As noted,

16

defendants addressed the fact in a footnote of their reply to Cordts's response to their motion to dismiss and the court acknowledged the argument in the "factual background" section of its memorandum opinion and order. Accordingly, defendants' contention that Cordts did not attempt to state a cause of action based on the Confidentiality Act is unavailing.

We are cognizant, however, that Cordts's complaint is formally defective insofar as it intermingles the statutory Confidentiality Act claim with the common law invasion of privacy claim. In that regard, section 2-613(a) of the Code of Civil Procedure states: "Parties may plead as many causes of action, counterclaims, defenses, and matters in reply as they may have, and each *shall be separately designated and numbered*." (Emphasis added.) 735 ILCS 5/2-613(a) (West 2004). Moreover, we recognize that Cordts has continued to intermingle the two claims on appeal. However, despite these formal defects, neither defendants nor the circuit court ever challenged the sufficiency of Cordts's allegations under the Confidentiality Act and, therefore, the claim is not now dismissible on that basis. See 735 ILCS 5/2-612(a), (c) (West 2004) ("If any pleading is insufficient in substance or form the court may order a fuller or more particular statement. If the pleadings do not sufficiently define the issues the court may order other pleadings." "All defects in pleadings, either in form or substance, not objected to in the trial court are waived"); 735 ILCS 2-615 (West 2004) ("All objections to pleadings shall be raised by motion. The motion shall point out specifically the defects complained of, and shall ask for appropriate relief, such as *** that a pleading be made more definite and certain in a specified *** manner").

In that regard, we also note that had defendants properly challenged the sufficiency of

No. 1-06-1158

Cordts's claim under the Confidentiality Act through a section 2-615 motion, Cordts would have been entitled to an opportunity to amend his complaint.[1]  See Richard v. Illinois Bell Telephone Co., 66 Ill. App. 3d 825, 842, 383 N.E.2d 1242, 1256 (1978), quoting Dinn Oil Co. v. Hanover Insurance Co., 87 Ill. App. 2d 206, 211-12 (1967) (" ' a cause of action should not be dismissed on the pleadings unless it appears that no set of facts can be proved which will entitle the pleader to relief, and then only if it is apparent that even after amendment, if leave to amend is sought, no cause of action can be stated" (emphasis omitted)); Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 467, 605 N.E.2d  493, 508 (1992) ("In Illinois, courts are encouraged to freely and liberally allow the amendment of pleadings").  The same is not true of a section 2-619 motion, where the defendant admits the legal sufficiency of the complaint (Lipinski, 325 Ill. App. 3d at 1144, 759 N.E.2d at 69), and where once the defendant satisfies the initial burden of going forward based on affirmative matter, the burden then shifts to the plaintiff.  See Nichol v. Stass, 192 Ill. 2d 233, 247, 735 N.E.2d 582, 591 (2000).  Therefore, we find that the circuit court erred in dismissing

------

[1]In a footnote to their appellate brief defendants contend that any attempt by Cordts to amend his complaint to add a Confidentiality Act claim should be barred because the applicable statute of limitations has run.  This contention is without merit since we have determined that the original complaint, although formally defective, sufficiently invoked the Confidentiality Act through citation and through the pleading of facts that fall under the Act's purview.  Moreover, in any event, an amendment to Cordts's Confidentiality Act claim would not be time barred because it would relate back to the original, timely filed complaint.  See McCorry v. Gooneratne, 332 Ill. App. 3d 935, 946, 775 N.E.2d 591, 601 (2002).

18

Cordts's Confidentiality Act claim pursuant to defendants' section 2-619 motion to dismiss.

Finally, because we have found that Cordts did, in fact, attempt to state a claim based on the Confidentiality Act, and because that claim's sufficiency was not challenged by way of a section 2-615 motion, we need not address whether the Confidentiality Act has preempted the common law action of invasion of privacy through public disclosure of private facts in the context of mental health information. Accordingly, for all the foregoing reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

FITZGERALD-SMITH, P.J., and O'MALLEY, J., concur.