ELMER COSMAN *et al.*, Plaintiffs-Appellants, v. FORD MOTOR COMPANY *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—95—2081

Opinion filed November 14, 1996.—Rehearing denied December 23, 1996.

Stuart D. Gordon and E. Regan Daniels Shepley, both of Zukowski, Rogers, Flood & McArdle, of Chicago, for appellants.

Beatriz M. Olivera, of Vigil, Berkley, Schulz & Gordon, P.C., of Chicago, for appellee Ford Motor Company.

Hinshaw & Culbertson, of Chicago (J. Marc Forkins and Kristin E. Hutson, of counsel), for appellee Georgie Boy Manufacturing Company.

Leherer, Flaherty & Canavan, of Wheaton, for appellee Motorhomes Unlimited, Inc.

JUSTICE CAHILL delivered the opinion of the court:

We here enter the complex world of warranties to repair motor vehicles and the impact upon them under the federal Magnuson-Moss Act (15 U.S.C. §§ 2301 through 2312 (1994)).

When in 1994 Elmer and Josephine Cosman sued the manufacturers of a motor home they purchased in 1989, they included two counts in the complaint under the Magnuson-Moss Act. Although the two repair warranties the Cosmans received when they purchased their motor home ran for five and six years, the trial court believed, not without reason, that it was compelled to apply a four-year statute of limitations under the Illinois Uniform Commercial Code (810 ILCS 5/2—725 (West 1994)). The court made two critical findings: (1) the repair warranties the Cosmans received were not promises of future performance under Illinois law, and (2) the four-year statute of limitations for actions on the sale of goods began to run when the goods were delivered, absent a promise of future performance. The problem with this analysis and disposition is immediately apparent: the Cosmans are holding warranties that have not expired, but they are unable to legally enforce them. There appears to be no Illinois decision that offers precise guidance. We believe the proper analysis compels a finding that the word "warranty" in the Magnuson-Moss Act is broader in meaning than the word "warranty" in the Illinois Uniform Commercial Code. A warranty under the Magnuson-Moss Act includes promises to repair products in the future whose inherent reliability is not warranted. Under the Uniform Commercial Code, a warranty to make repairs in the future is not addressed.

The Cosmans' five-count complaint against Motorhomes Unlimited, Inc., Georgie Boy Manufacturing Company, and Ford Motor Company, filed on April 7, 1994, alleges that the Cosmans bought a "1990 Georgie Boy Cruise Air III Motor home" from Motorhomes Unlimited on September 12, 1989. The motor home was built by Georgie Boy and incorporated an engine and chassis made by Ford.

Plaintiffs allege in their complaint that problems first arose with the vehicle in June 1990 when the brakes were replaced and the gear

box adjusted. Then, in September 1990, the catalytic converter and exhaust systems were replaced. Plaintiffs took the vehicle to Georgie Boy for more repairs in August 1991. The steering gear box was replaced a second time in October 1991. Despite these repairs, plaintiffs allege the vehicle remains "defective, unsafe, and dangerous."

Counts I, II and V are not a subject of this appeal. Counts III and IV allege Ford and Georgie Boy breached express and implied warranties under the federal Consumer Product Warranty Act, popularly known as the Magnuson-Moss Act (15 U.S.C. §§ 2301 through 2312 (1994)).

Ford and Georgie Boy filed motions to dismiss counts III and IV under section 2—615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615 (West 1994). They argued that the counts were barred by the four-year statute of limitations under section 2—725 of the Uniform Commercial Code. 810 ILCS 5/2—725 (West 1994). The trial court agreed and found that the four-year statute under section 2—725 of the Code began to run on September 12, 1989, when plaintiffs took delivery, and that the action was not filed within that limitations period. The court dismissed the Magnuson-Moss counts with prejudice. Plaintiffs then filed motions to reconsider and amend the complaint to include allegations of fraudulent concealment. The court denied both motions and found no just reason to delay enforcement or appeal of the dismissal. 134 Ill. 2d R. 304(a). Plaintiffs appeal.

■ We note that defendants' motions under section 2—615 of the Code of Civil Procedure should have been brought under section 2—619. Defendants rely on "affirmative matter"—the statute of limitations—to defeat plaintiffs' claims. A section 2—619 motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter which avoids or defeats the claim. *Joseph v. Collis*, 272 Ill. App. 3d 200, 206, 649 N.E.2d 964 (1995). Subsection (a)(9) permits dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1994). Designating a motion under a different paragraph of the Code is not fatal. See *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.*, 105 Ill. App. 3d 247, 253, 433 N.E.2d 1350 (1982). Plaintiffs have not been prejudiced by this error, so we will treat defendants' motions as if they had been filed under section 2—619 of the Code. We review the dismissal of the counts *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

■ The Magnuson-Moss Act creates civil actions for consumers in

state or federal court when suppliers, warrantors, or service contractors violate the provisions of the Act. 15 U.S.C. § 2310(d)(1) (1994). A consumer who prevails may elect repair, replacement, or refund of defective parts. 15 U.S.C. § 2301(10) (1994). If the product cannot be repaired after a reasonable number of attempts, the consumer may elect either a replacement or a refund. 15 U.S.C. § 2304(a)(4) (1994).

The Act imposes on manufacturers and express warrantors the same implied warranties imposed under state law only on the buyer's immediate seller. *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 518 N.E.2d 1028 (1988). The Act has no statute of limitations. When a federal statute creates a cause of action, but does not include a statute of limitations, federal common law directs courts to apply the state statute of limitations for the state action most analogous to the federal claim. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983).

■ Ford and Georgie Boy contend that the state law action most analogous to plaintiffs' Magnuson-Moss warranty claims is an action for breach of warranty in a contract for sale. We agree. That statute is found under section 2—725 of the Uniform Commercial Code. It reads:

"(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when a breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 810 ILCS 5/2—725 (West 1994).

Ford and Georgie Boy contend that plaintiffs' claims allege breach of warranties, the cause of action accrued upon delivery under section 2—725(2), and the lawsuit, filed more than four years after delivery of the vehicle, is untimely. Plaintiffs respond that this reading leads to an unfair result because it renders the remaining years of manufacturers' warranties of more than four years illusory and unenforceable.

State courts, when faced with this problem—a cause of action that expires under the Uniform Commercial Code while express warranties are still in effect—have analyzed the problem in different ways. One approach has been to hold that the warranty extends to future performance under the second paragraph of section 2—725 of

the Commercial Code. See *Nationwide Insurance Co. v. General Motors Corp.*, 625 A.2d 1172 (1993).

In *Nationwide*, the Pennsylvania Supreme Court decided a case with facts similar to those before us, although the action was filed under the Uniform Commercial Code, rather than the Magnuson-Moss Act. The court held that a 12-month or 12,000-mile automobile warranty covering "any repairs and needed adjustments to correct defects in material or workmanship" explicitly extended to the future performance of the vehicle. The court, in justifying this conclusion, identified the problem of applying warranties that outlast the four-year statute of limitations under the Uniform Commercial Code: "If Appellee's position were to prevail ***, the longer-term protection afforded by a warranty extending beyond four years would be completely illusory." *Nationwide*, 625 A.2d at 1177-78. See also *R. W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (promise to replace defective parts is a warranty of future performance); *Standard Alliance Industries, Inc. v. Black Clawssen Co.*, 587 F.2d 813, 820-21 (6th Cir. 1979) (one-year express warranty for repair and replacement explicitly extends to future performance).

Illinois courts, by contrast, have rejected this analysis in other contexts and construe the future performance exception in section 2—725(2) narrowly. We require that the extension of a warranty to "future performance" be explicit. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). The plaintiff in *Moorman* argued a promise that a bulk tank was designed to "withstand 60 lbs. per bushel grain and 100 m.p.h. winds" (91 Ill. 2d at 92) was a promise of future performance, bringing the claim within the exception to the rule that the statute of limitations begins to run upon delivery. The court adopted the definition of "explicit" as "[n]ot implied merely, or conveyed by implication; distinctly stated; plain in language; clear; not ambiguous; express; unequivocal." 91 Ill. 2d at 94. The court found that the promise of performance in the now famous *Moorman* tank was not explicit enough. The court held: "The mere expectation that a product's warranty extends for the life of the product does not delay the point at which the statute of limitations commences to run." *Moorman*, 91 Ill. 2d at 94. The court concluded that defendant's express warranty of the tank's durability did not explicitly extend to future performance. See also *Ridle v. Sprayrite Manufacturing Co.*, 198 Ill. App. 3d 597, 555 N.E.2d 1272 (1990); *Beckmire v. Ristokrat Clay Products Co.*, 36 Ill. App. 3d 411, 343 N.E.2d 530 (1976); *Wilson v. Massey-Ferguson, Inc.*, 21 Ill. App. 3d 867, 315 N.E.2d 580 (1974).

■ We follow this principle of narrow construction to determine

whether the warranties to repair in this case guarantee future performance of the goods. Ford made two express warranties. The first covers defects in the powertrain of the vehicle for 6 years or 60,000 miles after the delivery date. It states:

"Under the Limited Warranty *** Ford warrants that your selling dealer will repair, replace, or adjust all parts (expect [*sic*] tires) that are found to be defective in factory-supplied materials or workmanship. The defects must occur under normal use of the vehicle during the warranty coverage period."

This warranty does not promise a level of performance. It warrants only that the dealer will repair, replace, or adjust defects if parts of the powertrain in fact do malfunction. It does not warrant the quality of the powertrain or its performance. Plaintiffs argue "[w]hile there may be a theoretical difference between a warranty that the goods will perform without defect and a warranty that the goods will continue to perform because if they break, the warrantor will fix them, both are similarly prospective." Illinois courts since *Moorman* have rejected this reasoning and require an explicit statement that the *goods*, not the *warrantor*, will perform in a certain way in the future. A promise to repair parts of the powertrain for six years is a promise that the manufacturer will behave in a certain way, not a warranty that the vehicle will behave in a certain way.

■ Plaintiffs also argue that the implied—as opposed to the expressed—warranties guaranteed future performance. Plaintiffs allege in count IV that "the motor home was impliedly warranted to be substantially free of defects in material and workmanship, and thereby fit for the ordinary purposes for which the motor home was and is intended." The Magnuson-Moss Act defines an "implied warranty" as "an implied warranty arising under State law *** in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7) (1994). Under section 2—725(2) of the Uniform Commercial Code, an implied warranty of merchantability only applies to the condition of the goods at the time of sale—not to their future performance. *Nelligan v. Tom Chaney Motors, Inc.*, 133 Ill. App. 3d 798, 802, 479 N.E.2d 439 (1985); *Stoltzner v. American Motors Jeep Corp.*, 127 Ill. App. 3d 816, 469 N.E.2d 443 (1984) (implied warranties do not explicitly extend to future performance).

A defect will breach the implied warranty only if the defect existed when the goods left the seller's control. The cause of action for breach of implied warranty accrues upon delivery under section 2—725 of the Commercial Code. We believe the trial court properly dismissed plaintiffs' claim against Ford under count IV for breach of implied warranty brought more than four years after delivery.

Plaintiffs argue, in the alternative, that if the six-year warranties cannot be said to apply to future performance under the Commercial Code, then the most appropriate state statute to apply to their cause of action is found under section 13—205 or section 13—206 of the Illinois Code of Civil Procedure. 735 ILCS 5/13—205, 13—206 (West 1994). Section 13—205 applies to "civil actions not otherwise provided for" and carries a five-year limitations period. Section 13—206 applies to actions on written contracts and carries a 10-year limitations period.

This court, in *Nelligan v. Tom Chaney Motors, Inc.*, 133 Ill. App. 3d 798, 479 N.E.2d 439 (1985), considered a similar argument but was not required to resolve it. The plaintiff in *Nelligan* argued that her claim for breach of warranty brought under the Magnuson-Moss Act was governed by the five-year statute of limitations in section 13—205 of the Code of Civil Procedure because it was a "civil action not otherwise provided for." The court held that the plaintiff's claim, brought more than five years after she alleged she discovered the defect, was barred under either the four-year statute of limitations under the Commercial Code or the five-year statute of limitations under the Code of Civil Procedure. *Nelligan*, 133 Ill. App. 3d at 803-04.

The facts before us require that we address the substance of plaintiffs' argument. The alternative statute of limitations argument has some merit, for it is one way of overriding a result that renders the repair warranties in this case illusory, without making them promises of future performance. But it runs up against the plain language of the statutes upon which plaintiffs rely.

Section 2—725 of the Uniform Commercial Code applies to lawsuits for breach of contract for sale. Sections 13—205 and 13—206 of the Code of Civil Procedure specifically exclude claims which arise from the sale of goods. They both state: "Except as provided in Section 2—725 of the 'Uniform Commercial Code.'" 735 ILCS 5/13—205, 13—206 (West 1994). The promises to repair upon which plaintiffs rely in this case arose out of and were part of the consideration in the contract for sale of the vehicle. The contract was a transaction for the sale of goods and is governed by article 2 of the Uniform Commercial Code. We find that section 2—725 of the Commercial Code, with its four-year statute of limitations, is the most analogous state statute to plaintiffs' federal claim because plaintiffs' action for breach of promise to repair is based on the contract for sale of the vehicle.

But, we do not believe the cause alleged in count III against Ford fails under the Code's definition of warranty so that the action ac-

crues upon delivery under the second paragraph of section 2—725. We do not apply the Code's second paragraph, which provides that the statute of limitations for a breach of warranty accrues upon delivery, because we find that the breach of the promise to repair which plaintiffs allege in count III is not a "warranty" as defined by the Code.

■ The Commercial Code defines express warranty to mean:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." 810 ILCS 5/2—313 (West 1994).

Justice Zappala noted in his dissenting opinion in *Nationwide* that "[i]n the Uniform Commercial Code, the term 'warranty' is given a very specific definition." He explained that "[s]ince a warranty as defined by the Code is a promise as to the qualities of the goods, if the goods, when tendered, possess the qualities promised, the warranty has been satisfied; if the goods, when tendered, do not possess the promised qualities, the warranty has been breached." *Nationwide*, 625 A.2d at 1180 (Zappala, J., dissenting).

In this case, Ford warranted that it would repair defects in the powertrain of the motor home for 6 years or 60,000 miles from the date of delivery. This promise relates to Ford's obligations under the contract, not to the quality of the goods. It does not fit within the definition of warranty under the Commercial Code. Although it is a warranty made as part of the sale of the goods in the sense that it promises something associated with the sale, it does not "warrant" the quality of the vehicle or its performance. While promises to repair relate to the goods, the goods cannot "conform to the *** promise" to repair.

By contrast, the federal definition of "written warranty" under the Magnuson-Moss Act includes promises to repair within the concept of warranty. As Justice Zappala noted, "[u]nder federal law, such a promise is properly captioned a warranty." *Nationwide*, 625 A.2d at 1180 (Zappala, J., dissenting). The Magnuson-Moss Act defines "written warranty" as:

"(A) any written affirmation of fact or written promise made in

connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6) (1994).

■ A breach of a warranty of the condition of the powertrain would occur when the vehicle is delivered. But Ford's promise to repair defects in the powertrain is not a warranty of the condition of the powertrain at the time of delivery. Ford promised to repair defects for 6 years or 60,000 miles. A breach of the promise to repair cannot occur until Ford refuses or fails to repair the powertrain if and when it breaks. The Magnuson-Moss Act requires the consumer to allow the warrantor a "reasonable number of attempts *** to remedy defects" before the consumer may elect a refund or replacement of a defective product. 15 U.S.C. § 2304(a)(4) (1994). See *Sadat v. American Motors Corp.*, 114 Ill. App. 3d 376, 382-83, 448 N.E.2d 900 (1983) (where the court acknowledged that, under the Magnuson-Moss Act, "[t]he warrantor's failure to allow the consumer to elect replacement or refund gives rise to an action at law for breach of warranty in which the consumer must prove only that a defect in the product exists which the warrantor was unable to repair after a reasonable number of attempts").

The problem with the analysis of the majority in *Nationwide*—reading a repair warranty as though it were a performance warranty to avoid an unjust result—leads to a judicial broadening of the carefully drafted Uniform Commercial Code. A promise to repair is simply not a promise of performance. On the contrary, in the arms-length atmosphere of the market place, a promise to repair can more honestly be read as an admission that the thing sold might break, rather than a legally enforceable prediction that it will never need tending to.

Under this analysis plaintiffs should have the right to sue for a failure to repair at any time within the life of the warranty and within four years after the breach. Other courts to take this approach and hold the promise to repair is an independent obligation

that is not breached until the seller fails to repair include *Long Island Lighting Co. v. IMO Industries Inc.*, 6 F.3d 876 (2d Cir. 1993), and *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 389 N.E.2d 130, 415 N.Y.S.2d 817 (1979). But *cf. Tittle v. Steel City Oldsmobile GMC Truck, Inc.*, 544 So. 2d 883 (Ala. 1989).

The result we reach here does the least violence to two legislative acts—the Uniform Commercial Code and the Magnuson-Moss Act—drafted without an eye on the other. It preserves a four-year statute of limitations for promises that are part of a contract for the sale of goods, while recognizing that the Magnuson-Moss remedy for breach of a promise to repair cannot ripen until the promise is broken and has nothing to do with the inherent quality of the goods or their future performance.

Under Ford's 6-year or 60,000-mile warranty, plaintiffs may not claim that the vehicle was not of the quality bargained for, but Ford is still obligated by a term of the contract to make repairs. The refusal or failure to repair is actionable as a breach and the cause of action accrues when the promise to repair is breached and extends four years from that time. The trial court erred in dismissing plaintiffs' claim in count III based on the statute of limitations reckoned from the date of delivery.

The second express warranty offered by Ford is the "Emissions Defect Warranty." Ford warrants that the "vehicle is free from defects in materials and workmanship which would cause it to fail to conform with applicable EPA regulations for a period of five years or 50,000 miles, whichever occurs first." This warranty states not only that the vehicle is free of emissions defects upon delivery, but also that it will remain free of defects for five years. But plaintiffs allege in the complaint only that the exhaust system was replaced. They do not allege that the vehicle failed to conform to EPA emissions standards. The emissions defect warranty is not applicable to the case before us.

■ We next address plaintiffs' allegations of breach of express warranties by Georgie Boy. Plaintiffs allege in the complaint that "Georgie Boy provided a written warranty for the motor home." They state that a copy of the warranty is attached as exhibit D. Exhibit D is a copy of three pages from Georgie Boy's owner's manual. We consider, in our review under section 2—619, admissions in the record and exhibits attached to the pleadings. *Fahey v. State & Madison Property Ass'n*, 200 Ill. App. 3d 437, 558 N.E.2d 192 (1990). Our reading of the owner's manual shows that Georgie Boy made no written warranties as defined under section 2301 of the Magnuson-Moss Act. 15 U.S.C. § 2301(6) (1994). Plaintiffs fail to allege with specificity

any written warranties, affirmations, or promises by Georgie Boy. The trial court properly dismissed counts III and IV against Georgie Boy.

We reverse the dismissal of count III against Ford. We affirm the dismissal of count III against Georgie Boy. We affirm the dismissal of count IV against Ford and Georgie Boy.

Affirmed in part and reversed and remanded in part.

HOFFMAN, P.J., and O'BRIEN, J., concur.