SIXTH DIVISION

October 19, 2001

No. 1-00-3770

RUSSELL L. LIPINSKI,

Plaintiff-Appellant,

v.

MARTIN J. KELLY OLDSMOBILE, INC., and GENERAL MOTORS CORPORATION,

Defendants-Appellees.

))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Sheldon Gardner,

Judge Presiding.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Russell L. Lipinski appeals from an order of the trial court dismissing with prejudice his second amended complaint against defendants Martin J. Kelly Oldsmobile, Inc. (Kelly Oldsmobile), and General Motors Corporation (GM).  Plaintiff argues that the trial court erred in dismissing count I for failure to state a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq.
 (West 1998)) (Consumer Fraud Act) and count II, breach of implied warranty under the Magnuson-Moss Warranty - Federal Trade Commission Improvement Act  (15 U.S.C. §2301 
et seq.
 (1994)) (Magnuson-Moss Act), as being untimely.  We reverse and remand.

On April 10, 1997, plaintiff bought a used 1994 Oldsmobile Cutlass Supreme from Kelly Oldsmobile.  He also purchased a service contract for the car for $1,408.  On January 30, 1997, GM, the car's manufacturer, had issued a technical bulletin regarding several car models, including the 1994 Oldsmobile Cutlass Supreme, stating that "some owners may experience excessive consumption of engine oil."  The bulletin described the cause of the problem as "engine oil being introduced into the positive crankcase ventilation system (PCV) and then ingested into the engine and burnt."  The bulletin did not describe what the result of the excess consumption of engine oil would be.  Stating that it was "intended for use by professional technicians, not a 'do-it-yourselfer,'" the bulletin provided instructions on how to replace the "fresh and foul air sides" of the PCV system in order to remedy the problem.  However, the bulletin first detailed 11 other possible causes for excess oil consumption, besides leaks, that had to be checked and found in satisfactory condition before the PCV parts should be replaced.  At the time plaintiff purchased his car in April 1997, he was not told of the possible oil consumption problem.

On July 6, 1999, plaintiff filed a class action suit in the circuit court of Cook County against GM and Kelly Oldsmobile.  Plaintiff alleged that the engine in his car failed as a result of the excessive oil consumption and that he, therefore, had to replace the engine.  In August 1999, the case was removed to the United States District Court for the Northern District of Illinois but it was remanded back to the circuit court in November 1999.  In April 2000, the trial court dismissed plaintiff's amended complaint.  

On May 15, 2000, plaintiff filed a second amended complaint against GM and Kelly Oldsmobile.  Plaintiff alleged that his car was defective because it had an excessive risk of oil migration into the PCV system where it would be ingested into the engine and burned, resulting in excessive oil consumption and severe damage to the engine from insufficient oil.  Plaintiff alleged that the engine in his car failed as a result of the defect.  Plaintiff alleged that defendants knew that plaintiff's car had "the above described tendency for excessive oil consumption which causes severe damage to the engine in ordinary use"; that they knew this no later than January 30, 1997, when GM issued the technical bulletin to all its dealers; that they failed to disclose to plaintiff the Cutlass's tendency to consume excessive amounts of oil in ordinary use and that the defect causes severe engine damage; and that the omission was made with intent and in such manner that plaintiff and the members of the class relied on the omission.  Plaintiff stated that he would not have purchased the car if he had known of this tendency and that he suffered damages for the cost of replacing the engine and for the diminution in the value of the car.  

Count I alleged that the conduct of Kelly Oldsmobile and GM was unfair and deceptive and constituted an improper concealment, suppression, or omission of a material fact in violation of section 2 of the Consumer Fraud Act (815 ILCS 505/2
 (West 1998)).  Count II alleged that, pursuant to the Magnuson-Moss Act,
 Kelly Oldsmobile had breached the implied warranty of merchantability on the car 
when it sold plaintiff a car that was defective and unmerchantable because it was not substantially free of defects and was not fit for ordinary use.

Defendants filed motions to dismiss the second amended complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS §5/2-615 (West 1998)), arguing that count I failed to state a cause of action under the Consumer Fraud Act and count II was untimely.  On October 2, 2000, the trial court dismissed the second amended complaint with prejudice.  Plaintiff timely appeals from the dismissal order.  Plaintiff filed this appeal against both defendants.  However, on March 9, 2001, we allowed plaintiff's motion to dismiss GM from the appeal.  Kelly Oldsmobile remains as the sole appellee.

As plaintiff correctly states, although defendants filed their motions to dismiss pursuant to section 2-615, the motion to dismiss count II as untimely should have been filed pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS §5/2-619 (West 1998)).  A section 2-615 motion to dismiss admits all well-pleaded facts and attacks the legal sufficiency of the complaint, alleging only defects on the face of the complaint.
  Neppl v. Murphy
, 316 Ill. App. 3d 581, 584, 736 N.E.2d 1174, 1178 (2000).  A section 2-619 motion to dismiss, however, admits the legal sufficiency of the complaint and raises defects, defenses or other affirmative matters, such as the untimeliness of the complaint, which appear on the face of the complaint or are established by external submissions which act to defeat the plaintiff's claim, thus enabling the court to dismiss the complaint after considering issues of law or easily proved issues of fact.  
Neppl v. Murphy
, 316 Ill. App. 3d at 584, 585, 736 N.E.2d at 1178-79.  Nonetheless, whether the motion to dismiss was filed pursuant to section 2-615 or 2-619, our standard of review is 
de novo
. 
  
Neppl v. Murphy
, 316 Ill. App. 3d at 583, 736 N.E.2d at 1178.  

With regard to count I, the standard of review for a section 2-615 motion to dismiss is
 whether the complaint sufficiently states a cause of action for fraudulent concealment under the Consumer Fraud Act and the merits of the case are not considered.  See 
Elson v. State Farm Fire & Casualty Co.
,  295 Ill. App. 3d 1, 5, 691 N.E.2d 807, 810-11 (1998).  We must view the complaint in the light most favorable to plaintiff, taking as true for purposes of the motion to dismiss all
 well-pleaded facts of the complaint and the reasonable inferences that can be drawn therefrom.  
Ziemba v. Mierzwa
, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365, 1366 (1991).  However, we will disregard m
ere conclusions of law or fact unsupported by specific factual allegations.   
Doe v. Calumet City
, 161 Ill. 2d 374, 385, 641 N.E.2d 498, 503 (1994).
     

The omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud pursuant to section 2 of the Consumer Fraud Act.  
Perona v. Volkswagen of America, Inc.
, 292 Ill. App. 3d 59, 67, 684 N.E.2d 859, 866 (1997), citing 
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 504, 675 N.E.2d 584, 595 (1996).  Section 2 of the Consumer Fraud Act provides: 

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or
 the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact
, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965,
 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby
."  (Emphasis added.)  815 ILCS 505/2 (West 1998).

"A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be expected to rely in making a decision [regarding] whether to purchase the product." 
Perona
, 292 Ill. App. 3d at 67-68, 684 N.E.2d at 866.

A violation of the Consumer Fraud Act "must be pled with the same particularity and specificity" required in common law fraud claims.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  However, it is not necessary to plead a common law duty to disclose (
Connick
, 174 Ill. 2d at 505, 675 N.E.2d at 595) nor to show actual reliance in order to state a valid claim based on an omission
 or concealment under the Consumer Fraud Act.  
Perez v. Citicorp Mortgage, Inc.
, 301 Ill. App. 3d 413, 420-21, 703 N.E.2d 518, 523 (1998).  Under the Consumer Fraud Act, "the intention of the seller (his good or bad faith) is not important and a plaintiff can recover under the Act for innocent misrepresentations."  
Duhl v. Nash Realty, Inc.
, 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267, 1277 (1981).   

"To state a claim under the Consumer Fraud Act, a complaint must set forth specific facts that show (1) a deceptive act or practice by the defendant;  (2) the defendant's intent that the plaintiff rely on the deception;  (3) the deception occurred in the course of conduct involving a trade or commerce;  and (4) the consumer fraud proximately caused the plaintiff's injury."  
Perona
, 292 Ill. App. 3d at 65, 684 N.E.2d at 864, citing 
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593; see also 
Kelly v. Sears Roebuck & Co.
, 308 Ill. App. 3d 633, 641, 720 N.E.2d 683, 690 (1999).  Here, taking the well-pled allegations in plaintiff's complaint as true for purposes of the section 2-615 motion to dismiss, we conclude that those allegations sufficiently state a cause of action for fraudulent concealment under the Consumer Fraud Act.

Plaintiff's second amended complaint alleges in pertinent part as follows:

"5. On or about April 10, 1997, plaintiff purchased a used 1994 Oldsmobile Cutlass Supreme ('Cutlass') from Kelly Olds.  A copy of the purchase order is attached as 
Exhibit A
.

6. The Cutlass was manufactured by defendant GM.

7. Defendant Kelly Olds is a merchant of used vehicles in that it regularly engages in the sale of used vehicles.

* * *

9. The Cutlass was defective in that in ordinary use it had an excessive risk for engine oil to migrate into the positive crankcase ventilation system, and be ingested into the engine and be burned.  This defect results in excessive oil consumption and causes severe damage to the engine from insufficient oil.

10. Defendants had knowledge that 1991-95 year model Chevrolet Lumina and Monte Carlo, Oldsmobile Cutlass and Pontiac Grand Prix, when equipped with the 3.4 liter twin double overhead cam engine, had the above described tendency

11. Defendants had knowledge of the defect in this class of vehicles prior to the time of the sale of the Cutlass to [plaintiff].

12. The defect in this class of vehicles was known to GM and Kelly Olds no later than January 30, 1997, when GM's Oldsmobile Division issued a technical service bulletin, 67-60-01, to all of its dealers regarding this problem.  A copy of the bulletin is attached as 
Exhibit B
.

13. Defendants failed to disclose to [plaintiff] the Cutlass's tendency to consume excessive amounts of oil in ordinary use, and that the defect causes severe engine damage.

14. Defendants' failure to disclose this tendency is a material omission in that plaintiff would not have purchased the vehicle had he known of this tendency.

15. Defendants failed to disclose the above described tendency with intent and in such manner that plaintiff and members of the class relied on the omission.

16. In mid-1998, the engine in plaintiff's vehicle failed as a result of the defect.

17. Plaintiff suffered damages in the following respects:

a. Cost of replacing the damaged and defective engine.

b. The value of the vehicle has diminished.

* * *

20. The continued sale of the vehicles after the engine problem was known and without disclosure of such problem constituted willful and malicious fraud on the purchasers.  Substantial punitive damages are warranted for such conduct.

* * *

[Count I - Illinois Consumer Fraud Act]

27. The conduct of defendants, GM and Kelly Olds, was unfair and deceptive and constituted an improper concealment, suppression, or omission of a material fact in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

28. The aforementioned omission was made in trade or commerce.

29. As a direct and proximate result of defendants' aforementioned violation of the Illinois Consumer Fraud Act, plaintiff suffered damages including but not limited to the reduced value of the purchased vehicle."

Plaintiff has clearly alleged the elements necessary to sustain his claim under the Consumer Fraud Act.  (1) Plaintiff alleged a deceptive act by Kelly Oldsmobile, stating that: his Cutlass was defective when he bought it (paragraph 9 of the complaint); that all 1994 Cutlass models had that defect (paragraphs 10 and 11); that Kelly Oldsmobile knew of the general defect before plaintiff bought his car from Kelly Oldsmobile in April 1997 (paragraph 11) because GM issued the technical bulletin "to all of its dealers" in January 1997 and, since it sells Oldsmobiles, Kelly Oldsmobile is, by inference, such a dealer (paragraph 12); and that Kelly Oldsmobile failed to disclose "the Cutlass's  tendency to consume excessive amounts of oil in ordinary use, and that the defect causes severe engine damage" to plaintiff when he bought his car (paragraph 13).  (2) Plaintiff stated that Kelly Oldsmobile intended that plaintiff rely on that omission in making the decision to purchase (paragraph 15) and that this constituted the omission of a material fact because plaintiff would not have bought the car if he had known of the tendency to consume excess oil (paragraph 14).  (3) Plaintiff stated that the omission occurred in the course of sale or commerce (paragraph 28), of which there is no question.  Lastly, (4) plaintiff stated that the damages that he suffered, the replaced engine and diminution of value of his car, were due to the engine failure caused by the defect (paragraphs 16, 17, and 29).

Despite Kelly Oldsmobile's argument to the contrary, plaintiff's use of the term "tendency" to describe the defect, as in "tendency to consume excessive amounts of oil," is sufficient to allege that a defect existed.  See 
Connick
, 174 Ill. 2d at 504-05, 675 N.E.2d at 595 (supreme court found plaintiffs adequately pled a consumer fraud violation based on material omission by Suzuki Motor Co. where complaint alleged (a) Suzuki Motor Co. was aware of the Suzuki Samurai model's "tendency" to rollover; (b) Suzuki failed to inform consumers of the safety risks; and (c) defects were a material fact because plaintiffs would not have purchased the Samurai model if they had been aware of the problems).

The fact that the technical bulletin, attached to the complaint as exhibit B, stated that "some owners 
may
 experience excessive consumption of engine oil" (emphasis added) does not defeat the allegation in the complaint that the 1994 Oldsmobile Cutlass model suffers from the defect.  In ruling on a section 2-615 motion, "[e]xhibits attached to the complaint are included as part of the complaint and must also be considered." 
Gardner v. Senior Living Systems, Inc.,
 314 Ill. App. 3d 114, 117, 731 N.E.2d 350, 353 (2000).  "Where inconsistent, the exhibit controls over the factual allegations in the pleading." 
F.H. Prince & Co. v. Towers Financial Corp.
, 275 Ill. App. 3d 792, 797, 656 N.E.2d 142, 146 (1995).  We do not find the bulletin inconsistent with plaintiff's allegation that his car had the defect.  From the bulletin, it would appear that plaintiff's Cutlass could
 have suffered from the defect.  Whether it actually did is a matter for the trier of fact to determine.  "At this stage, we are concerned only with the sufficiency of the factual allegations, not matters of proof."  
Schaffner v. 514 West Grant Place Condominium Ass'n
, No. 1-01-0441, slip op. at 19 (August 29, 2001). 

Similarly, exhibit D, a letter from plaintiff's attorney to Kelly Oldsmobile's insurer, does not contradict plaintiff's allegation that the engine failed due to the defect.  Exhibit D states:

"I am writing on behalf of Mr. Russell Lipinski with regard to the above-captioned claim.  On or about August 5, 1998, you advised Mr. Lipinski that coverage for the required repairs to his vehicle would not be provided under the service contract because 'the failure was due to insufficient lubrication and coolants.'

However, this determination cannot be correct, because the vehicle's oil was changed and refilled at regular intervals, as indicated on the enclosed receipts."

We do not find that the letter serves to break the causal connection between the alleged defect and plaintiff's damages.  Clearly the letter was intended to rebut the insurance company's assertion that the engine failed due to plaintiff's failure to maintain proper lubrication.  It in no way states that insufficient lubrication was the actual cause of the engine failure.  Whether the engine failed as a result of the alleged excessive oil consumption defect is for the trier of fact to determine.  Having found that plaintiff adequately pled a violation of section 2 of the Consumer Fraud Act based on the omission of a material fact by Kelly Oldsmobile, count I of the complaint is reinstated.

Plaintiff also argues that count II, filed pursuant to the Magnuson-Moss Act, was not time barred.  The Magnuson-Moss Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under * * * [an] implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. §2310(d)(1) (1994).  The Magnuson-Moss Act defines an implied warranty as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product."  15 U.S.C.  §2301(7) (1994).  

"[T]he provisions of section 2308 clearly demonstrate the policy of Magnuson-

Moss to sustain the protection afforded to consumers by implied warranties."  
Szajna v. General Motors Corp.
, 115 Ill. 2d 294, 314, 503 N.E.2d 760, 769 (1986).  Section 2308 states:

"
No supplier may disclaim or modify
 (except as provided in subsection (b) of this section [limiting the duration of an implied warranty to the duration of a limited written warranty])
 any implied warranty to a consumer with respect to such consumer product if
 (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) 
at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product
."  (Emphasis added.) 15 U.S.C. §2308(a) (1994). 

Here, plaintiff stated in count II of his complaint that, at the time that he bought the Cutlass, he entered into a service contract with Kelly Oldsmobile to cover the car.  If, as plaintiff asserted in his complaint, the parties did enter into a service contract, Kelly Oldsmobile may not be able to disclaim an implied warranty
.

An implied warranty arises under our state law pursuant to section 2-314 of the Uniform Commercial Code (810 ILCS 5/2-314(1) (West 1992)).  An implied warranty of merchantability is created in a contract for the sale of goods, unless modified or excluded, "if the seller is a merchant with respect to goods of that kind."  810 ILCS 5/2-314(1) (West 1992).  To be merchantable, goods "must be at least such as * * * are fit for the ordinary purposes for which such goods are used."  810 ILCS 5/2-314(2)(c) (West 1992).  With regard to automobiles, "[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects."   
Overland Bond
 
& Investment Corp. v. Howard
, 9 Ill. App. 3d 348, 354, 292 N.E.2d 168, 172-73 (1972).     

 There is no statute of limitations in the Magnuson-Moss Act for breach of an implied warranty; therefore, we apply our state statute of limitations for breach of an implied warranty.  
Cosman v. Ford Motor Co.
, 285 Ill. App. 3d 250, 255, 674 N.E.2d 61, 64-65 (1996).  Section 2-725 of the Uniform Commercial Code provides a four-year statute of limitation in contracts for sale as follows:

"(1) 
An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued
. * * *

(2) 
A cause of action accrues when the breach occurs
, regardless of the aggrieved party's lack of knowledge of the breach.  
A breach of warranty occurs when tender of delivery is made
, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  (Emphasis added.)  810 ILCS 5/2-725 (West 1992).

In its motion to dismiss, Kelly Oldsmobile argued that the statute of limitations for breach of implied warranty on secondhand goods starts to run from the date that the goods are delivered as new.  Since plaintiff's car was delivered as new in 1994, Kelly Oldsmobile argued that plaintiff's 2000 action was timebarred because it was filed six years after delivery.  Citing to sections 2-725(1) and (2) of the Uniform Commercial Code (810 ILCS 5/2-725(1), (2) (West 1992)) plaintiff argues, however, that accrual of the statute of limitations on warranties is determined from the time of delivery of the goods to the purchaser at issue, including where the contract is for the sale of secondhand goods.  Therefore, because the used Cutlass was delivered to plaintiff in April 1997, the four-year statute of limitations would not expire until April 2001 and plaintiff's May 2000 action was timely filed.

  Section 2-314 does not specifically address whether the sales of both new and used goods give rise to implied warranties.  
Overland Bond
, 9 Ill. App. 3d at 352, 292 N.E.2d at 171.  However, a comment to the statute states that "[a] specific designation of goods by the buyer does not exclude the seller's obligation that they be fit for the general purposes appropriate to such goods.
  A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description
."  (Emphasis added.)  810 ILCS Ann. 5/2-314, Uniform Commercial Code Comment, at 187 (Smith-Hurd 1993).  The court in 
Overland Bond
 found that "such a contract obligation may create a warranty of merchantability in the sale of a used automobile."  
Overland Bond
, 9 Ill. App. 3d at 352, 292 N.E.2d at 171.  

In 
Overland Bond
, the sales contract for a used car specifically stated that the buyer acknowledged delivery and acceptance of the car "in good condition."  
Overland Bond
, 9 Ill. App. 3d at 355, 292 N.E.2d at 173.  The court held that "when the seller (a merchant with respect to automobiles) delivered to the buyers a vehicle in 'good' condition, warranties attached which were similar in character to those which attach to the sale of new cars.  An appropriate implied warranty of merchantability was created by the contract for this 'good' used car * * *."  
Overland Bond
, 9 Ill. App. 3d at 353-54, 292 N.E.2d at 172.  As the 
Overland Bond
 court stated, "[d]efects which have been held to make operation of a new automobile unfit and thereby cause a breach of implied warranties may result in the breach of the same warranties on a used automobile."  
Overland Bond
, 9 Ill. App. 3d at 354, 292 N.E.2d at 172.  Clearly an implied warranty can exist in a contract for the sale of a secondhand car, albeit apparently a different, more restrictive, warranty than that existing in a contract for the sale of new goods.  Accordingly, an "appropriate" implied warranty of merchantability would have been created by the contract for the sale of plaintiff's used Cutlass.   

An implied warranty of merchantability applies to the condition of the goods at the time of sale and is 
breached only if the defect in the goods existed when the goods left the seller's control.  
Cosman v. Ford Motor Co.
, 285 Ill. App. 3d 250, 257, 674 N.E.2d 61, 66 (1996)
.  Although the sales contract between plaintiff and Kelly Oldsmobile did not specify in what condition the Cutlass was sold, the car must at least have been fit for the ordinary purpose of driving, and therefore should have been in safe condition and substantially free of defects when it was sold to plaintiff.
  Clearly if, as plaintiff claimed, the Cutlass suffered the excessive oil consumption defect endemic to its model type, it was not substantially free of defects and fit when delivered as new and it continued to be unfit when sold as used.  Whether the defect did exist at the time of delivery is for the trier of fact to determine.

Pursuant to section 2-725, the cause of action for breach of an implied warranty accrues when tender of delivery was made.  810 ILCS 5/2-725 (West 1992);   
Cosman
, 285 Ill. App. 3d at 257, 674 N.E.2d at 66.  Here, such delivery was made when plaintiff bought his used Cutlass in 1997.  Although, as noted above, the implied warranty on secondhand goods extends only as is "appropriate" to those goods under their particular contract of sale, such an implied warranty nevertheless exists and the purchaser of those secondhand goods should not be denied the benefit of that warranty merely because he did not buy the goods as new.  What that "appropriate" warranty is and whether it has been excluded or limited is for the trial court to decide.  But, at a minimum, the purchaser of used goods should have the same protection as the purchaser of goods when new and be able to bring his case to the trier of fact for resolution within four years from the time of delivery.  To deny a subsequent purchaser of a car the same four-year period of limitations accorded to the purchaser of the car when new would defeat the consumer protection purposes of both the Magnuson-Moss Act and the Uniform Commercial Code.  Therefore, since an implied warranty may apply in the sale of a used car and plaintiff filed his action within four years of tender of delivery, we find that count II was timely filed.

Having found that plaintiff sufficiently alleged a cause of action for fraudulent concealment in count I and timely filed count II, we reverse the trial court's dismissal of plaintiff's amended complaint and remand to the trial court for further consideration. 

Reversed and remanded.

O'BRIEN and O'MARA FROSSARD, JJ., concur.