Rule 23 Order filed
 NO. 5-01-0634

July 8, 2002; 

Motion to publish granted 
 IN THE

August 13, 2002.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

ROBERT DIGGS,    )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Randolph County.

)

v. )  No. 01-MR-31

)

DONALD N. SNYDER, JR., ROGER D. COWAN, )

LEORA HARRY, CAPTAIN KORANDO, )

CAPTAIN MOORE, LIEUTENANT ROBERT E. ) 

GALES, TOM CARTER, MINH SCOTT, and D. )

SULLINS, )  Honorable

)  William A. Schuwerk, Jr.,

     Defendants-Appellees. )  Judge, presiding.

________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:  

Robert Diggs (plaintiff) appeals from the dismissal by the circuit court of Randolph County of his complaint filed under the Illinois Religious Freedom Restoration Act (the Act) (775 ILCS 35/1 
et seq.
 (West 2000)).  He contends that the motion to dismiss filed by Donald N. Snyder, Jr., Roger D. Cowan, Leora Harry, Captain Lloyd Korando, Captain Eva Moore, Lieutenant Robert E. Gales, Tom Carter, Minh Scott, and Doug Sullins (defendants), all of whom are employees of the Department of Corrections (the Department), failed to demonstrate that his rights under the Act were not violated by the confiscation of a religious pamphlet.  He asserts that defendants impinged on his right to the free exercise of his religion because they did not use the least restrictive means by which to achieve a compelling governmental interest.  Plaintiff seeks the reversal of the trial court's order and an order from this court granting the relief requested in his complaint.

BACKGROUND

Plaintiff is an inmate in the Department at Menard Correctional Center (Menard) serving a 30-year prison sentence for aggravated criminal sexual assault, a 20-year prison sentence for another aggravated criminal sexual assault, a 30-year prison sentence for armed robbery, one 15-year prison sentence for residential burglary, and two four-year prison sentences for residential burglary.  The date for his discharge from mandatory supervised release is April 27, 2032. 

On April 10, 2001, plaintiff, a follower of Islam, filed an action seeking injunctive and declaratory relief from the circuit court.  He complained that on June 19, 2000, he was disciplined for an unspecified infraction of Department rules, that he was punished with time in segregation, and that upon his release from segregation, where he was not allowed to have a television set, he was unable to persuade the authorities to give him a State-loan television on which to view Friday Jumu'ah services.  He asked the court to direct defendant Roger Cowan, warden of Menard, to provide a free State television to plaintiff so that he could participate in the televised Jumu'ah services.  He also asked the court to issue a declaratory judgment finding that Cowan had failed to provide him with an alternative means to physical presence at Jumu'ah services by denying him a free State-loan television, thereby violating his rights under the first amendment of the United States Constitution, the Constitution of the State of Illinois, and the Act.  Exhibits attached to the pleading demonstrated that plaintiff had pursued a grievance about his lack of a State-loan television to the point of exhaustion.  Because the disposition of this filing is not an issue on appeal, it need not be discussed further.

On April 11, 2001, plaintiff filed a complaint under the Act.  He asserted that on June 14, 2000, he was improperly ticketed for gang or unauthorized organization activity  when correctional officers shook down his cell and found an Islam-related pamphlet that "condemned" all correctional officers and any others who would interfere with the practice of Islam.  The pamphlet, which is not a part of the record on appeal, apparently included a "condemnation pledge"–a "pledge to condemn all correctional officer[s] and any people who deny, deprive[,] or hinder the practice of worshiping Allah"–but plaintiff asserted that he had not signed the pledge.  He contended that his Muslim religion was authorized by the Department, that he was not given notice that the pamphlet constituted contraband or unauthorized property, and that he was not informed that it was necessary for him to disavow Islam because it was a gang or an unauthorized organization.  Nonetheless, plaintiff was found guilty of gang or unauthorized organizational activity and possession of contraband or unauthorized property, confined to segregation for three months, and reduced to C grade for three months.  No good-conduct credit was revoked as a result of the disciplinary action, but plaintiff lost his prison job as a consequence of the ticket.  Plaintiff sought a declaration by the court that defendants' actions violated the Act.

Exhibits to the complaint established that plaintiff grieved the discipline imposed, but he did not assert that the practice of his Islamic religion was in any way burdened by the confiscation of the pamphlet.  His grievance was denied based on the grievance officer's finding that possession of the pamphlet was not authorized by the facility and that the contents, while not specifically gang-related, constituted unauthorized organizational materials.  The officer also relied on Muslim chaplain Mu'min's statement, "[T]he pledge is not literature condoned or disseminated by the Chaplaincy Department."  Plaintiff appealed the discipline imposed to the point of the exhaustion of his administrative remedies.  The finding of guilt on the first charge (gang or unauthorized organizational activity) was expunged from his record by the administrative review board.  The adjustment committee's finding of guilty of possession of contraband or unauthorized property was affirmed in a hearing report that stated, "It is the Board's opinion that the material should be considered [c]ontraband/[u]nauthorized [p]roperty based on the reference to 'condemning all correctional officers ...[.]' " 

On June 6, 2001, defendants moved, pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2000)), to dismiss plaintiff's complaint for injunctive relief and his complaint under the Act.  In regard to the complaint, they noted that plaintiff failed to assert that defendants' actions constituted a substantial burden on his religious practices.  They contended that the confiscation of a single pamphlet due to its threatening content did not constitute a substantial burden on plaintiff's right to the free exercise of his Islamic religion.  They further claimed that even if it did, the Department may infringe on an inmate's constitutional rights by confiscating unauthorized, threatening printed matter if that impingement is reasonably related to legitimate penological interests, in this case maintaining order and security in the prison.  Defendants argued that because the administrative review board deleted the disciplinary action related to gang or unauthorized organization activity from plaintiff's institutional record, his argument that the Department was somehow requiring him to renounce his religion was baseless. 

On July 6, 2001, plaintiff filed a response to the motion to dismiss, moved for injunctive relief, and filed a "motion for economic and non[]economic loss" seeking $45 per day for each day he spent in segregation as a result of the disciplinary action.  He asserted that he was entitled to advance notice in the form of an institutional directive that the pamphlet constituted contraband and that, absent such notice, he should not have been disciplined.  Plaintiff claimed that he was still being punished on the basis of his religion because, despite the fact that the disciplinary action for gang or unauthorized organizational activity was expunged from his record, he lost his State-loan television as a result of the discipline and he had no alternative means by which to participate in the televised Friday Jumu'ah service.  Plaintiff’s injunction demand sought an order directing defendants to expunge the second disciplinary report from his record, return him to his job assignment at the rate of pay he previously had enjoyed, return the confiscated pamphlet to him, and submit all documents to the publications review committee in the future.

On July 9, 2001, the trial court granted defendants' motion to dismiss.  In relevant part, it found that no notice was required prior to the adoption of regulations that affected religious practices, that plaintiff's exercise of religion had not been substantially burdened by the confiscation of the pamphlet, that defendants confiscated the pamphlet as the least restrictive means to achieve a compelling government interest, and that plaintiff was not punished on the basis of his Muslim religion.

CONTENTIONS ON APPEAL

Plaintiff argues that defendants' motion to dismiss failed to demonstrate that his rights under the Act were not violated by the confiscation of his pamphlet.  He asserts that defendants impinged on his right to the free exercise of his religion because they did not use the least restrictive means to achieve a compelling governmental interest.  He argues that, first, the confiscation was not done in the furtherance of a governmental interest, second, he lacked notice that the possession of the pamphlet was against Department rules, and third, the Department did not submit the pamphlet to the publications review committee.  He contends that the dismissal of his complaint should be reversed and his complaint should be granted, presumably by this court.  He has abandoned his contentions in regard to the refusal of the Department to provide him with a State television on which to view Jumu'ah services,  and thus no further discussion of that issue is necessary.

STANDARD OF REVIEW

Defendants filed a motion to dismiss under section 2-619 of the Code, which admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions that defeat the action (
Lipinski v. Martin J. Kelly Oldsmobile, Inc.
, 325 Ill. App. 3d 1139, 1144, 759 N.E.2d 66, 69 (2001)).  It does not admit conclusions of law that are unsupported by specific allegations.  
Lipinski
, 325 Ill. App. 3d at 1144, 759 N.E.2d at 69.  We review
 de novo
 the grant of a section 2-619 motion to dismiss.  
Parks v. Kownacki
, 193 Ill. 2d 164, 175, 737 N.E.2d 287, 293 (2000).  Where, as here, a cause of action is dismissed pursuant to a section 2-619 motion, the questions on appeal are whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law.  
Nowak v. St. Rita High School
, 197 Ill. 2d 381, 389, 757 N.E.2d 471, 477 (2001).  A reviewing court may affirm a dismissal for any reason appearing in the record.  
Lyons v. Ryan
, 324 Ill. App. 3d 1094, 1100, 756 N.E.2d 396, 401 (2001), 
appeal allowed
, 197 Ill. 2d 564, 763 N.E.2d 771 (2001).  

DISCUSSION

There is a paucity of cases involving the Illinois Act, given its relatively recent passage.  We may therefore turn to federal cases for guidance, despite the fact that the federal statute, codified at 42 U.S.C. §2000bb 
et seq.
 (2000), was held unconstitutional because it exceeded the scope of its enforcement power under the fourteenth amendment by applying the law to the states.  See 
City of Boerne v. Flores
, 521 U.S. 507, 138 L. Ed. 2d 624, 117 S. Ct. 2157 (1997).  Because it is still applicable in the federal context (see 
Kikumura v. Hurley
, 242 F.3d 950, 959 (10th Cir. 2001)), cases discussing the federal statute will be utilized in the following discussion.

As the Supreme Court observed in 
Wisconsin v. Yoder
, 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972):

"It is true that activities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare[] or the Federal Government in the exercise of its delegated powers.  [Citations.]  But to agree that religiously grounded conduct must often be subject to the broad police power of the State is not to deny that there are areas of conduct protected by the Free Exercise Clause of the First Amendment and thus beyond the power of the State to control, even under regulations of general applicability."  
Yoder
, 406 U.S. at 220, 32 L. Ed. 2d 15, 92 S. Ct. at 1535.

The Illinois Act expressly stated that the 
Yoder
 "compelling interest" test was to be applied to governmental actions in all cases in which the free exercise of religion is substantially burdened.  775 ILCS 35/10(a)(6), (b)(1) (West 2000).  It provides that the government may not burden an individual's free exercise of religion unless imposing that burden, first, furthers a compelling governmental interest and, second, is the least restrictive means of furthering that interest.  775 ILCS 35/15 (West 2000).  Whether a governmental interest is compelling is a question of fact.  
Abiera v. City of Chicago
, 949 F. Supp. 637, 643 (N.D. Ill. 1996).

The statute does not define what constitutes a substantial burden.  Based on
 Wisconsin v. Yoder
, 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972), the hallmark of a substantial burden on one's free exercise of religion is the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation.  
Yoder
, 406 U.S. at 217-18, 32 L. Ed. 2d at 26, 92 S. Ct. at 1534.

In the context of the confiscation of a publication, it is the duty of a plaintiff to make a threshold showing that the complained-of action does, in fact, impose a "substantial burden" on the free exercise of his religion.  
Stefanow v. McFadden
, 103 F.3d 1466, 1471 (9th Cir. 1996).  In 
Stefanow
, the reviewing court upheld the confiscation of a book that advocated racism and violence in an inflammatory fashion, promoted the concept of the oppression of white Christians by a worldwide conspiracy, headed by Jewish people, and called for white Christians to enlist in a "war of survival."  
Stefanow
, 103 F.3d at 1472-73.  The book was not one that was central to the plaintiff's religious practices, which were predicated on the study of the Bible.

To constitute a showing of a substantial burden on religious practice, a plaintiff must demonstrate that the governmental action "prevents him from engaging in conduct or having a religious experience that his faith mandates."  
Stefanow
, 103 F.3d at 1471.  Plaintiff did not assert below or on appeal that he was required by the basic tenets of his religion to possess the pamphlet in question or to sign the pledge that it set forth.  Moreover, Chaplain Mu'min told the investigating officer that "the pledge [was] not literature condoned or disseminated" by his office.  Plaintiff therefore failed to meet his burden to plead and prove that the confiscation of the unauthorized pamphlet prevented him from fulfilling any religious obligation mandated by Islamic law or practice, warranting the grant of defendants' motion to dismiss.

Even if he had pled and proven that the confiscation of the pamphlet was a burden on the practice of Islam, the grant of the motion to dismiss would still have been proper.  In the context of prison regulations, those that promote order, safety, and discipline have been found to be sufficiently "compelling" reasons to impose a burden on an inmate's practice of his religion.  
E.g., Young v. Saunders
, 169 F. Supp. 2d 553 (W.D. Va. 2001) (the prison did not violate an inmate's right to the free practice of religion by precluding the inmate, who practiced the Egyptian Freemasonry religion, from having oils, powders, incense, candles, roots, herbs, barks, berries, stones, talismans, and charm bags because the prison had a need to prevent oils, roots, herbs, and incense from being used to mask the odor of burning marijuana or being used as flammable accellerants and because candles could be used to start fires); 
Johnson v. Baker
, 67 F.3d 299 (6th Cir. 1995) (unpublished opinion) (Nation of Islam Muslim's religious beliefs were not substantially burdened by a regulation that deprived him of the particular time and place to observe his beliefs and the company of other Black Muslims); 
Abdur-Rahman v. Michigan Department of Corrections
, 65 F.3d 489, 492 (6th Cir. 1995) (reasonable time, place, or manner restrictions upon communal religious gatherings do not necessitate the identification of a compelling State interest); 
Diaz v. Collins
, 114 F.3d 69 (5th Cir. 1997) (the federal statute does not preclude a prison from imposing restrictions on hair length, the wearing of a head band, or the possession of a medicine bag, due to a compelling interest in preventing the concealment of contraband).  In 
Stefanow
, the court found that it was proper to preclude an inmate from possessing literature that posed a threat of violence within the prison, the population of which was by definition antisocial, criminal, and unable to regulate its conduct in a manner that showed respect for the law or an appreciation of the rights of others.

The courts are not to interfere with the day-to-day management of prison systems, which must be allowed to anticipate security problems and to adopt innovative remedies for the almost insurmountable, perpetual problems that plague correctional institutions.  
Turner v. Safley
, 482 U.S. 78, 89, 96 L. Ed. 2d 64, 107 S. Ct. 2254, 2262 (1987).  The confiscation of a pamphlet that incited inmates to "condemn correctional officers" or others who would deny, deprive, or hinder the worship of Allah was not only acceptable but also prudent.  The pamphlet's inflammatory language and accompanying pledge form could logically have been construed by the facility to present a message that would jeopardize the safety and security of the facility, filled as it was with violent offenders.  The trial court properly found that the Department was justified in construing the pamphlet to be unauthorized contraband.

Plaintiff's next contention is that, prior to allowing the Department to punish an inmate for possessing the pamphlet the Department must have the religious publications committee view a pamphlet such as the one he possessed, receive an opinion that the pamphlet is unacceptable for inmate possession, and publicize the fact that the pamphlet is contraband material.

Each prison in the Department maintains a list of publications that are approved for possession by inmates, and additions to the approved publications are made on a quarterly basis.  20 Ill. Adm. Code §525.210(a) (2002).  Publications review committees are established at every facility in the Department to handle requests for publications that are not on the approved list.  20 Ill. Adm. Code §525.220 (2002).  If a publication is not on the approved list, an inmate may request such a review from the chief administrative officer, who will transmit the request to the publications review committee, which will then inform the inmate that a review has been initiated and that the inmate has the right to submit various forms of support for the proposed inclusion.  20 Ill. Adm. Code §525.230 (2002).  

Committed persons may obtain religious publications in accordance with Department rules governing the receipt of material from outside of the facility.  Religious publications that inmates receive must first be submitted for approval to the publications review committee of the facility in which they are incarcerated.  The publications review committee has the discretion to confer with the chaplain in reaching its decision to accept or reject a publication.  20 Ill. Adm. Code §425.80(a), (b) (2002).  The committee is directed to prohibit the acceptance of publications that present a "clear and present danger to the physical safety and security of persons and property within the facility."  20 Ill. Adm. Code §525.230(c)(2) (2002).  If a publication is unacceptable, it is disposed of as contraband material.  20 Ill. Adm. Code §525.210(e) (2002).

The Illinois Administrative Code establishes that plaintiff's assertion that the Department is responsible for submitting the pamphlet in question to the publications review committee in order that he might be on notice about its status is totally without merit.  It is clearly necessary for an inmate, not the Department, to request the review of any religious tract he would like to possess or run the risk of being ticketed for possession of contraband material.  The trial court properly found that plaintiff was not entitled to an injunction.

For the foregoing reasons, the grant of defendants' motion to dismiss and the denial of injunctive relief are affirmed.

Affirmed.

MAAG, P.J., and CHAPMAN, Melissa, J., concur.