2023 IL App (2d) 220137-U
No. 2-22-0137
Order filed April 28, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| *In re* I.M., | ) Appeal from the Circuit Court |
| | ) of Kane County. |
| | ) |
| | ) No. 21-MH-34 |
| | ) |
| | ) Honorable |
| (The People of the State of Illinois, Petitioner- | ) John A. Noverini, |
| Appellee, v. I.M., Respondent-Appellant). | ) Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*: Section 2-702 of the Code of Civil Procedure (735 ILCS 5/2-702 (West 2020)), which establishes the procedures by which one can file a petition for a certificate of innocence, is inapplicable to respondent's wrongful confinement claim because he was involuntarily admitted to a mental hospital and not convicted of a felony and imprisoned which is required by statute to seek a certificate of innocence; therefore, the trial court's decision to strike respondent's petition was proper.

¶ 2   The issue on appeal is whether the trial court erred in granting the State's motion to strike the petition of respondent, I.M., for a certificate of innocence which was filed pursuant to section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2020)) as respondent's effort to pursue his claim of "wrongful confinement" in a mental institution. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On March 4, 2021, respondent's mother filed a petition seeking respondent's involuntary admission to a mental health facility in the circuit court of Lake County. See 405 ILCS 5/3-700 (West 2020) (involuntary inpatient admission by court order). The petition alleged that respondent is a person with a mental illness who, (1) because of his mental illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct causing him or another physical harm or placing him or another in reasonable expectation of physical harm; (2) because of his mental illness, is unable to provide for his basic physical needs so as to guard himself from serious harm without the assistance of others unless treated on an inpatient basis; (3) refuses treatment or is not adhering adequately to prescribed treatment, is unable to understand his need for treatment, and is reasonably expected, based on his behavioral history, to suffer mental or emotional deterioration, and after such deterioration, is reasonably expected to meet either of the first two criteria; and (4) is in need of immediate hospitalization to prevent harm. On that day, the court entered an order for respondent's detention, examination, and diagnostic evaluation at the Elgin Mental Health Center (EMHC). Respondent was taken to the emergency room at a hospital in Elgin for medical clearance prior to being transported to the EMHC. Respondent was admitted to the EMHC on March 5, 2021.

¶ 5     On March 8, 2021, a second petition for involuntary admission was filed. See 405 ILCS 5/3-600 (West 2020) (involuntary inpatient admission by certification). This petition was filed in the circuit court of Kane County. It was prepared by Deb Prichard, a social worker who had observed respondent at the hospital. The petition sought emergency inpatient admission of respondent based on the same allegations as the petition filed in Lake County. This petition was

supported by a written statement from Prichard and inpatient certificates completed by two psychiatrists who had examined respondent.

¶ 6     According to Prichard's statement, respondent had been admitted to the EMHC on March 5, 2021.  Respondent, a 30-year-old college graduate and former accountant, had been living in the basement of his parents' home in Round Lake Heights.  His mother reported that he began having mental health issues at the age of 22 and that his symptoms had worsened.  Over several months, respondent had become aggressive, including slamming doors and breaking furniture in the home.  He began turning off the furnace and water supply to the home.  The petition described the altercation between respondent and his mother that led to his admission; his mother told respondent to stop destroying things and respondent threw a chair at her, hitting her leg. The police were called, and they took respondent to the emergency room.  Prichard attempted to talk with respondent at the hospital, but he pulled the bed covers over his head and refused to speak. She asked him what brought him into the hospital, if he felt he was a danger to himself or others, if he had a place to live, and whether he wished to leave the hospital.  Respondent replied by repeatedly saying, "I decline to answer" and "I'm waiting for my CPAP."  Prichard stated that because of his "guardedness" and refusal to answer questions, she recommended respondent remain hospitalized for evaluation to assess whether he was a danger to himself or others or whether he was able to care for his basic needs.

¶ 7     Dr. Christopher Sullivan and Dr. Eva Kurilo both stated in their inpatient certificates that they examined respondent and it was their opinion that respondent was a person with a mental illness who, (1) because of his mental illness was reasonably expected, unless treated on an inpatient basis, to engage in conduct placing him or another in physical harm or in reasonable expectation of physical harm; (2) because of his mental illness is unable to provide for his basic

physical needs so as to guard himself from serious harm without assistance, unless treated on an inpatient basis; (3) refuses treatment or is not adhering adequately to prescribed treatment, is unable to understand his need for treatment, and is reasonably expected based on his behavioral history, to suffer mental or emotional deterioration and after such deterioration, is reasonably expected to meet either of the first two criteria; and (4) is in need of immediate hospitalization to prevent harm. Dr. Sullivan explained that respondent appeared "guarded" and demonstrated "illogical and disorganized thought." He stated that respondent's presentation was consistent with psychotic illness and being a danger to himself or others and that he was in need of hospitalization. Dr. Kurilo stated respondent had "mood problems" with an onset of eight years ago. She indicated that respondent had been physically aggressive towards his mother and described the interactions between respondent and his mother that led to respondent's admission.

¶ 8    The petition was set for hearing on March 12, 2021. The hearing was continued numerous times, over respondent's objections, and rescheduled for April 9, 2021. Respondent was subsequently discharged from the EMHC on April 7, 2021. Because respondent was discharged, the petition was withdrawn on April 9, 2021.[1]

¶ 9    On January 27, 2022, respondent filed a *pro se* petition for a certificate of innocence pursuant to section 2-702 of the Code (735 ILCS 5/2-702 (West 2020)). Respondent used a standard legal form entitled "Petition for Certificate of Innocence" provided by the Clerk of the Circuit Court of Cook County. However, respondent changed the language in the form in

---

[1]There are no transcripts of any of the proceedings on the petition for involuntary admission included in the record on appeal. The record does confirm that respondent was represented by a public defender during those proceedings.

numerous ways. He changed the caption from "In the Circuit Court of Cook County, Illinois" to "In the Circuit Court of Kane County, Illinois." He struck out the standard language which stated, "I was convicted of one or more felonies in the above captioned cause by the State of Illinois in the County of Cook," and typed in the following language directly above it, "I believe I was wrongfully confined by Lake County Circuit Court Court Ordered Petition and Confined in Kane County DHS Center." He also added the following language to the petition by typing between lines of standard language in the form: "I am requesting a Certificate of Innocence for my wrongful confinement in a DHS Mental Health Institution;" "Wrongful confinement in a mental institution should be similar to a prisoner wrongfully imprisoned in a State Institution;" and "Discharge in Kane County to serve to Kane County State's Attorney Office."

¶ 10    In a six-page affidavit filed in support of his petition, respondent stated that he believed he was wrongfully confined during his time as an involuntary patient at the EMHC. He stated that he was innocent prior to being "arrested" in Lake County "with the Court Order provided by the Illinois Lake County Circuit Court." He claimed that the petition filed in Lake County was not a "true medical emergency and did not have any appropriate medical certificates attached to hold [him] against his will." He stated that he was wrongfully confined for longer than 30 days to "await trial for the requirement of medication and confinement but did not have any proper evidence to actually convict or confine a person as to required medication or confine to a longer stay that the discharge was allowed by the Kane County Judge and [he] should be viewed as innocent." He further contended that he:

> "successfully defended against the confinement in a mental institution and defended against the requirement of medication when I was discharged from the Circuit Court of Kane County on April 9th 2021 that I believe this confinement should be seen as

wrongful confinement as similar to a prisoner's innocence to be awarded a Certificate of Innocence to be recognized with the Illinois Court of Claims but for a mental health case." Pointing to the fact that he was assigned a public defender to represent him in the involuntary admission proceedings, he asserted that this matter should be seen as a "quasi-criminal" proceeding. Respondent stated that the public defender's office and the EMHC do not have "a proper review board as similar to a prisoner's review board" and do not "recognize the need to prove innocence for the defendant when the defendant defeats a petition for involuntary confinement [by being] discharged from confinement." Citing section 2-702 of the Code, respondent states that he is filing a petition for a certificate of innocence due to the "wrongful confinement in a mental health institution although it does not match perfectly as to be imprisoned in a [*sic*] Illinois prison institution that the wrongful confinement should be noted for being wrongfully confined in a mental health institution for longer than 30 days due to the court ordered arrest and confinement."

¶ 11    On March 14, 2022, respondent filed a motion in support of his petition for a certificate of innocence asking the trial court judge to hold a hearing to "recognize a need for a [*sic*] innocent discharged subject to reclaim innocence after a wrongful confinement" so the court of claims can "process the Circuit Court Judge approved Petition for a Certificate of Innocence as similar to a prisoners [*sic*] innocence." On March 21, 2022, respondent filed a 22-page document entitled "Second Affidavit for – Petition for a Certificate of Innocence." The document contains discussion of and references to numerous amendments to the United States Constitution, case law from federal and state jurisdictions, and numerous federal and Illinois statutes. The document states, *inter alia*, that wrongful confinement in a mental health institution should be treated the same as a criminal conviction for the purpose of seeking a certificate of innocence.

¶ 12    At a hearing held on April 1, 2022, the trial judge asked respondent for clarification as to what he was seeking, asking respondent if he was "trying to get monetary damages for being wrongfully detained" and commenting "which if you were, I can understand that, but I'm saying maybe you ought to bring a civil suit." Respondent stated that he wanted a certificate of innocence. He stated further "I understand that this petition is not necessarily recognized, because – in a sense, you know I am coming from the understanding that the petition for Certificate of Innocence is understood for criminal cases, and I understand that this case is a quasi criminal, which is why I was assigned a Public Defender [for the involuntary admission proceedings]."

¶ 13    The State argued that a petition for a certificate of innocence filed pursuant to section 2-702 of the Code only applies to criminal cases and specifically to someone who has been convicted of a felony and subsequently imprisoned for one year or more. The State noted that respondent had struck out portions of the standard form petition referring to these requirements and added his own language about applying the statute to a mental health case. The State argued that there may be "different pathways" that respondent could pursue to seek redress in this case but that a certificate of innocence is not one of them. After allowing extensive arguments from both sides, the court ruled "I agree with the State. I don't think this is the proper remedy, so the Petition for Certificate of Innocence will be denied. The motion to Strike will be granted." The trial court ruled that it was a final and appealable order.

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    Before we turn to the merits of this appeal, we must first address the State's renewal of its motion to strike respondent's brief for his failure to comply with multiple provisions of our supreme court rules. We note that respondent is self represented. However, it is well established

that "*pro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys." *JB Morgan Chase Bank, National Associates v. Jones,* 2019 IL App (1st) 181909, ¶ 29; *In re Estate of Pellico,* 394 Ill App. 3d 1052, 1067 (2009).

¶ 17    Throughout the pendency of this appeal, respondent filed numerous motions, many of which were related to the preparation of his brief (including motions for extensions of time to file his opening brief, motions for leave to file an opening brief in excess of the page limitation, a motion to file a supplemental brief, motions to stay the appeal to obtain additional time, a motion to "relax" the rules regarding brief requirements, and a motion to file a reply brief in excess of the page limitation).  Notably, respondent also filed no less than five motions seeking the appointment of counsel on appeal which this court denied because respondent has no right to appointed counsel on a petition for a certificate of innocence. In several of these motions, respondent requested, in the alternative, that the rules regarding briefs be "relaxed" for him if counsel were not appointed. In these instances, we further admonished respondent that he, like any *pro se* litigant, must substantially comply with the supreme court rules pertaining to briefs.

¶ 18    Once respondent's brief was filed, the State filed a motion to strike his brief, to compel him to file a brief in compliance with the supreme court rules, and to set a new briefing schedule. The State pointed to respondent's numerous violations of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) regarding the form and content of briefs (misrepresentation of the length of his brief due to misleading pagination and a substantial use of single spacing; omission of a "Points and Authorities" section; lack of a proper issue statement or statement of jurisdiction; improper "Statement of Facts" containing argument and no citations to the record; an argument section comprised largely of discussion of issues not before the court and with no citations to the record

on appeal; and an argument section that is "basically incoherent, nonsensical and based on a flawed supposition, that this appeal is from a mental health code matter."). The State also argued that respondent "ignore[d] multiple orders of this Court indicating that this appeal was solely from the Kane County court's denial of appellant's Petition for a Certificate of Innocence and was not an appeal from the dismissed Lake County mental health matter." The State explained "the deficiencies in [respondent's] brief make it difficult to respond to [his] confusing and often nonsensical claims."[2]

¶ 19    In denying the State's motion to strike respondent's brief, we ruled that our denial was subject to reconsideration, and we further clarified the matter by instructing the State to "file a response brief addressing whether Kane County circuit court properly struck appellant's petition for a certificate of innocence as a vehicle for appellant's 'wrongful confinement' claim." In its brief, the State renewed its objection and again asked this court to strike respondent's brief.

¶ 20    We are mindful of the challenges respondent faces in representing himself on appeal. Nevertheless, failure to comply with Rule 341 which governs the form and contents of briefs is not an inconsequential matter. The rules of our supreme court "are not aspirational. They are not

---

[2]Respondent also filed a 732-page Table of Contents/Appendix which is not in compliance with Illinois Supreme Court Rule 342 (eff. Oct. 1, 2019). His reply brief violates Supreme Court Rule 341 (eff. Oct. 1, 2020) by failing to confine his argument strictly to replying to the State's brief, by exceeding the page limitation (although the reply brief is 20 pages in length, it contains a significant amount of single spacing), and by including an unnecessary 23-page appendix mostly comprised of orders issued by this court.

suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke,* 166 Ill. 2d 204, 210 (1995).

¶ 21    This court has the authority to strike a brief that lacks substantial conformity to our supreme court rules. *Hall v. Naper Gold Hospitality LLC,* 2012 IL App (2d) 111151, ¶ 7. Still, striking a brief is a harsh sanction that is only appropriate where violations of the procedural rules hinder our review. *Hall,* 2012 IL App (2d) 111151, ¶ 15. In this case, we have the benefit of a clear and cogent brief submitted by the State. Based on the State's brief and our own review of respondent's briefs, we have been provided with the facts necessary for an understanding of the case and can discern, generally, respondent's assignment of error. Thus, despite the egregious deficiencies and violations in respondent's brief and even though respondent was admonished numerous times that substantial compliance with the rules was expected, we will address the merits of the trial court's decision to strike respondent's petition for a certificate of innocence. This is the only issue properly before the court in this appeal.[3]

---

[3]Respondent filed an appeal of the trial court's decision in the Lake County case involving the first petition for involuntary admission (No. 2-22-0191) which was consolidated with the appeal before us. However, that appeal was subsequently dismissed as untimely. Despite this dismissal, respondent continued to seek, via numerous motions filed in this court, inclusion in *this* appeal the record and issues from the Lake County case. Respondent has also included discussion and argument regarding the Lake County case in his brief in this appeal. However, we will disregard references to matters outside of the record and beyond the scope of the one issue properly before the court in this appeal. See *Keener v. City of Herrin,* 235 Ill. 2d 338, 346 (2009) (holding that a party may not rely on matters outside the record to support its position on appeal); *Affiliated*

¶ 22　　We now turn to the merits.　At issue in this appeal is whether the trial court erred in granting the State's motion to strike respondent's petition for a certificate of innocence filed pursuant to section 2-702 of the Code (735 ILCS 5/2-702 (West 2020)).

¶ 23　　Although not expressly designated as such, the State's motion to strike respondent's petition for a certificate of innocence was argued and ruled upon as a motion with respect to the pleadings under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)).　A section 2-615 motion to strike challenges the legal sufficiency of a pleading by alleging defects on the face of the pleading.　*Marshall v. Burger King Corp.,* 222 Ill. 2d 422, 429 (2006).　A case " 'should not be dismissed on the pleadings unless it appears that no set of facts can be proved which will entitle the pleader to relief, and then only if it is apparent that even after amendment, if leave to amend is sought, no cause of action can be stated.' " *Cordts v. Chicago Tribune Co.,* 369 Ill. App. 3d 601, 613 (2006) (quoting *Dinn Oil Co. v. Hanover Insurance Co.,* 87 Ill. App. 2d 206, 211-12 (1967)). We review an order granting or denying a section 2-615 motion to strike *de novo. Marshall*, 222 Ill. 2d at 429.

¶ 24　　Although respondent's argument is difficult to follow, his objective is clear; he believes his involuntary admission to the EMHC was wrongful and he wants to be declared "innocent."　He contends that the trial court should have construed section 2-702 of the Code in a way to allow him to obtain a certificate of innocence in the same way a person convicted of a felony can petition to do so when he or she asserts that he or she was wrongfully convicted of a crime.　However, his argument is contrary to the plain language of the statute.

---

*Health Group, Ltd. v. Devon Bank,* 2016 IL App (1st) 152685, ¶ 27 (holding that a court of review will only consider issues properly raised as to the judgments specified in the notice of appeal).

¶ 25    Section 2-702 of the Code provides a way for innocent people who have been wrongfully convicted of crimes in Illinois and subsequently imprisoned to obtain relief against the State for wrongful incarceration through the court of claims. 735 ILCS 5/2-702(a) (West 2020). To obtain a certificate of innocence, the person wrongfully convicted must prove by a preponderance of the evidence that:

"(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information, or his or her acts or omissions charged in the indictment did not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(g) (West 2020).

¶ 26    The standard form "Petition for Certificate of Innocence" respondent used to file his claim in this case contains all of the aforementioned statutory requirements. However, respondent struck out a required element of a certificate-of-innocence claim, namely, the requirement that he "was convicted of one or more felonies in the above captioned case by the State of Illinois." He then

added new language stating, "I believe I was wrongfully confined by Lake County Circuit Court Court Ordered Petition and Confined in Kane County DHC Center." In many of his court filings, respondent acknowledged that his situation did not fit within the required statutory framework. On the face of the petition itself, respondent added the following language: "Wrongful confinement in a mental institution should be similar to a prisoner wrongfully imprisoned in a State Institution." In his affidavit attached to the petition, respondent quoted the language of section 2-702 of the Code and explained: "I believe this confinement should be seen as wrongful confinement as similar to a prisoner's innocence to be awarded a Certificate of Innocence to be recognized with the Illinois Court of Claims but for a mental health case." At the hearing on the State's motion to strike, respondent stated further:

> "it should be viewed as a wrongful confinement kind of understanding for prisoners, not necessarily in a prison for the criminal division, like I said, but for mental health.
>
> Like I said, the motion – this motion is not necessarily being understood by the Kane County State's Attorney's Office, ***
>
> But this is correct, the standardized forms for the petition, what is available to *pro se* lit–*pro se*, you know, one who defends his own self at this point. So I think it's correct that even though it's more geared to the criminal division, that there should be some understanding of going into a process like a trial ***"

Later in the hearing, respondent acknowledged: "I do recognize that it's [a petition for certificate of innocence] not specifically defined in the law for mental health cases, which could be understood that, you know, orally could be better recognized as a legal course of understanding to be allowed to that kind of trial."

¶ 27    The plain language of the statute is clear; to petition for a certificate of innocence, a person must be "convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit." 735 ILCS 5/2-702 (b)(1) (West 2020). Respondent was not convicted of a felony, and he was not sentenced to a term of imprisonment. We acknowledge that respondent believes he was wrongfully confined in the EMHC and is asking this court to extend that statute to meet his needs. However, we have no authority to do so. See *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11 (stating that courts will not depart from the plain language of the statute by reading provisions into it). We find, as a matter of law, respondent is not eligible to make a claim under section 2-702 of the Code. Therefore, we affirm the trial court's decision to strike his petition.

¶ 28    Finally, while respondent has attempted to raise a multitude of other issues and arguments in his briefs, our review is limited to only the judgments or parts of judgments specified in the notice of appeal. Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017); *General Motors Corp. v. Pappas,* 242 Ill. 2d 163, 176 (2011). In this case, the trial court's decision on April 1, 2022, to strike respondent's petition for a certificate of innocence is the only judgment at issue. Therefore, we lack jurisdiction to consider all other matters respondent has attempted to raise before this court.

¶ 29                              III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 31    Affirmed.